# PENNSYLVANIA *v.* FINLEY

No. 85–2099.   Argued March 2, 1987—Decided May 18, 1987

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, POWELL, O'CONNOR, and SCALIA, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 559. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 559. STEVENS, J., filed a dissenting opinion, *post*, p. 570.

*Gaele McLaughlin Barthold* argued the cause for petitioner. With her on the briefs were *Ann C. Lebowitz, Ronald Eisenberg,* and *William G. Chadwick, Jr.*

*Catherine M. Harper,* by appointment of the Court, 479 U. S. 928, argued the cause and filed a brief for respondent.*

---

*\*Linley E. Pearson,* Attorney General of Indiana, and *William E. Daily* and *Lisa M. Paunicka,* Deputy Attorneys General, filed a brief for the State of Indiana et al. as *amici curiae* urging reversal, joined by officials for their respective States as follows: *John Van de Kamp,* Attorney General of California, *John J. Kelly,* Chief State's Attorney for Connecticut, *Charles M. Oberly,* Attorney General of Delaware, *Jim Smith,* Attorney General of Florida, *Corinne K. A. Watanabe,* Attorney General of Hawaii, *Jim Jones,* Attorney General of Idaho, *Robert T. Stephan,* Attorney General of Kansas, *David L. Armstrong,* Attorney General of Kentucky, *William J. Guste, Jr.,* Attorney General of Louisiana, *William L. Webster,* Attorney General of Missouri, *Travis Medlock,* Attorney General of South

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In 1975 respondent was convicted of second-degree murder by the Court of Common Pleas of Philadelphia County. She was sentenced to life imprisonment. Her appointed trial attorney appealed the conviction to the Supreme Court of Pennsylvania. That court unanimously affirmed the conviction. 477 Pa. 211, 383 A. 2d 898 (1978). Having failed on direct appeal, respondent, proceeding *pro se,* sought relief from the trial court under the Pennsylvania Post Conviction Hearing Act. See 42 Pa. Cons. Stat. § 9541 *et seq.* (1982). She raised the same issues that the Supreme Court of Pennsylvania had rejected on the merits. The trial court denied relief, but the State Supreme Court reversed, holding that respondent was entitled, under state law, to appointed counsel in her postconviction proceedings. 497 Pa. 332, 440 A. 2d 1183 (1981). On remand, the trial court appointed counsel. Counsel reviewed the trial record and consulted with respondent. He concluded that there were no arguable bases for collateral relief. Accordingly, he advised the trial court in writing of his conclusion and requested permission to withdraw. The trial court conducted an independent review of the record and agreed that there were no issues even arguably meritorious. The court thus dismissed the petition for postconviction relief.

Respondent acquired new appointed counsel and pursued an appeal to the Superior Court. Over a dissent, that court concluded that the conduct of the counsel in the trial court's postconviction proceedings violated respondent's constitu-

Carolina, *Mary Sue Terry,* Attorney General of Virginia, *Bronson C. La-Follette,* Attorney General of Wisconsin, and *Archie G. McClintock,* Attorney General of Wyoming.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *Larry W. Yackle, Alvin J. Bronstein, Vivian O. Berger, David Goldstein,* and *Stefan Presser;* and for the National Legal Aid and Defender Association by *David P. Bergschneider.*

tional rights. 330 Pa. Super. 313, 479 A. 2d 568 (1984). The court held that "Pennsylvania law concerning procedures to be followed when a court-appointed attorney sees no basis for an appeal is derived from the seminal case of" *Anders* v. *California*, 386 U. S. 738 (1967). 330 Pa. Super., at 318, 479 A. 2d, at 570. In *Anders*, this Court held that when an attorney appointed to represent an indigent defendant on direct appeal finds a case wholly frivolous:

> "[H]e should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." 386 U. S., at 744.

The Superior Court held that respondent's postconviction counsel had failed to follow these procedures, and it therefore remanded the case to the Court of Common Pleas for further proceedings. We granted certiorari, 479 U. S. 812 (1986), and we now reverse.

We think that the court below improperly relied on the United States Constitution to extend the *Anders* procedures to postconviction proceedings. The holding in *Anders* was based on the underlying constitutional right to appointed counsel established in *Douglas* v. *California*, 372 U. S. 353 (1963). Relying on "that equality demanded by the Fourteenth Amendment," *id.*, at 358, the *Douglas* Court held that denial of counsel to indigents on first appeal as of right amounted to unconstitutional discrimination against the poor. In *Anders*, the Court held that in order to protect the "constitutional requirement of substantial equality and fair process" set out in *Douglas*, appointed appellate counsel must follow the procedures described above when a case appears to be frivolous. 386 U. S., at 744. Of course, *Anders* did

not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. Rather, *Anders* established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel.

We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, see *Johnson* v. *Avery*, 393 U. S. 483, 488 (1969), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. *Wainwright* v. *Torna*, 455 U. S. 586 (1982); *Ross* v. *Moffitt*, 417 U. S. 600 (1974). We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process. See *Boyd* v. *Dutton*, 405 U. S. 1, 7, n. 2 (1972) (POWELL, J., dissenting).

In *Ross* v. *Moffitt, supra,* we analyzed the defendant's claim to appointed counsel on discretionary review under two theories. We concluded that the fundamental fairness exacted by the Due Process Clause did not require appointment of counsel:

> "[I]t is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a crimi-

nal defendant's consent, it is clear that the State need not provide any appeal at all. *McKane* v. *Durston*, 153 U. S. 684 (1894). The fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way." 417 U. S., at 610–611.

We also concluded that the equal protection guarantee of the Fourteenth Amendment does not require the appointment of an attorney for an indigent appellant just because an affluent defendant may retain one. "The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Id.*, at 616.

These considerations apply with even more force to postconviction review. First, we reject respondent's argument that the *Anders* procedures should be applied to a state-created right to counsel on postconviction review just because they are applied to the right to counsel on first appeal that this Court established in *Douglas*. Respondent apparently believes that a "right to counsel" can have only one meaning, no matter what the source of that right. But the fact that the defendant has been afforded assistance of counsel in some form does not end the inquiry for federal constitutional purposes. Rather, it is the source of that right to a lawyer's assistance, combined with the nature of the proceedings, that controls the constitutional question. In this case, respondent's access to a lawyer is the result of the State's decision, not the command of the United States Constitution.

We think that the analysis that we followed in *Ross* forecloses respondent's constitutional claim. The procedures followed by respondent's habeas counsel fully comported with fundamental fairness. Postconviction relief is even further removed from the criminal trial than is discretionary direct

review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. See *Fay* v. *Noia*, 372 U. S. 391, 423–424 (1963). It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, cf. *United States* v. *MacCollom*, 426 U. S. 317, 323 (1976) (plurality opinion), and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.

Nor was the equal protection guarantee of "meaningful access" violated in this case. By the time respondent presented her application for postconviction relief, she had been represented at trial and in the Supreme Court of Pennsylvania. In *Ross*, we concluded that the defendant's access to the trial record and the appellate briefs and opinions provided sufficient tools for the *pro se* litigant to gain meaningful access to courts that possess a discretionary power of review. 417 U. S., at 614–615. We think that the same conclusion necessarily obtains with respect to postconviction review. Since respondent has no underlying constitutional right to appointed counsel in state postconviction proceedings, she has no constitutional right to insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right.

Respondent relies on *Evitts* v. *Lucey*, 469 U. S. 387, 401 (1985), for the proposition that even though the State need not grant a prisoner access to counsel on postconviction review, once it has done so, the Due Process Clause of the Fourteenth Amendment requires that counsel's actions comport with the procedures enumerated in *Anders*. In *Evitts*, the Court held that a State cannot penalize a criminal defendant by dismissing his first appeal as of right when his appointed counsel has failed to follow mandatory appellate rules. In so ruling, the Court rejected the State's argument that since it need not provide an appeal in the first place, see

*McKane* v. *Durston*, 153 U. S. 684 (1894), it could cut off a defendant's appeal without running afoul of the Due Process Clause. Noting that "[t]he right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms," 469 U. S., at 400–401, the Court reasoned that "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause," *id.*, at 401. Respondent argues that by allowing counsel to represent her without complying with *Anders*, the Court of Common Pleas improperly deprived her of her state-law right to "effective" assistance.

We think that *Evitts* provides respondent no comfort. Initially, the substantive holding of *Evitts*—that the State may not cut off a right to appeal because of a lawyer's ineffectiveness—depends on a constitutional right to appointed counsel that does not exist in state habeas proceedings. More important, however, is the fact that unlike the prisoner in *Evitts*, who was actually deprived of a state-created right to appeal, respondent here has suffered no deprivation, assuming for the moment that the Due Process Clause is relevant. Cf. *Wainright* v. *Torna*, 455 U. S., at 588, n. 4 *(per curiam)*; *Polk County* v. *Dodson*, 454 U. S. 312 (1981). The Court of Common Pleas found that respondent's right to counsel under Pennsylvania law was satisfied by the conduct of her appointed counsel, combined with the court's independent review of the record. The Superior Court did not disagree with this state-law holding. Rather, it ruled that *Anders* required even more assistance, as a matter of federal constitutional law. We have rejected that conclusion, and therefore the State's obligations, as a matter of both federal and state law, have been fulfilled. Since respondent has received exactly that which she is entitled to receive under state law—an independent review of the record by competent counsel—she cannot claim any deprivation without due process.

At bottom, the decision below rests on a premise that we are unwilling to accept—that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume. On the contrary, in this area States have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review. In Pennsylvania, the State has made a valid choice to give prisoners the assistance of counsel without requiring the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal as of right. In this context, the Constitution does not put the State to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines annunciated in *Anders*. The judgment of the Superior Court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, concurring in the judgment.

I agree with the Court's conclusion that the Superior Court erred in its belief that the United States Constitution required the application of the procedures mandated by *Anders v. California*, 386 U. S. 738 (1967), to this case. In my view, however, on remand the Superior Court should be able to consider whether appointed counsel's review of respondent's case was adequate under Pennsylvania law or the Pennsylvania Supreme Court's remand order.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

On respondent's appeal from denial of state collateral relief, the Pennsylvania Supreme Court held that state law required Dorothy Finley's counsel to review the record carefully, to amend her petition for relief, and to file a brief on her behalf. On remand, however, her counsel advised the

trial court (Court of Common Pleas) summarily to dismiss her petition. Today the Court reverses the subsequent determination of the appellate court (Superior Court) that the performance of Dorothy Finley's trial counsel was deficient for failure to comply with three different sets of requirements: those established by *Anders* v. *California,* 386 U. S. 738 (1967), by *Commonwealth* v. *McClendon,* 495 Pa. 467, 434 A. 2d 1185 (1981), and by the remand order issued originally by the Pennsylvania Supreme Court.

In Pennsylvania, courts may comply with either the *Anders* or the *McClendon* procedures when appointed counsel wishes to withdraw from representation of a petitioner's collateral attack upon a judgment. 330 Pa. Super. 313, 320–321, 479 A. 2d 568, 571 (1984). The *Anders* procedures require counsel to perform a conscientious evaluation of the record, to write a brief referring to "arguable" support in the record, and to give notice to the client. The trial court may grant counsel's request to withdraw after a full examination of the record. *Anders* v. *California, supra,* at 744. The *McClendon* procedures require "an exhaustive examination of the record" by counsel and an "independent determination" by the court that the petition is wholly frivolous. No *Anders* brief or notice to client is required. 330 Pa. Super., at 320–321, 479 A. 2d, at 571.

In addition to finding that trial counsel complied with neither of these two sets of requirements, the state appellate court found that the lower court failed to comply with the specific requirements of the remand order of the State Supreme Court. In that circumstance, the appellate court decision rested on this independent state ground, and the petition for certiorari should be dismissed as improvidently granted. Moreover, the controversy involving the application of the *Anders* procedures is not ripe for review. Finally, I believe that counsel's deficient performance violated Finley's federal rights to due process and equal protection. I therefore dissent.

## I

The failure of the trial court to ensure compliance with the State Supreme Court's instructions on remand is an independent state ground for the appellate court's decision. After exhausting direct appeals of her criminal convictions, Finley filed a *pro se* application for collateral relief pursuant to the Pennsylvania Post Conviction Hearing Act, 42 Pa. Cons. Stat. § 9541 *et seq.* (1982) (PCHA). The trial court summarily denied the petition. The Pennsylvania Supreme Court reversed and held that Finley was entitled to appointed counsel if indigent, since the PCHA required the appointment of counsel to assist her in a meaningful manner. 497 Pa. 332, 334, 440 A. 2d 1183, 1184 (1981). The State Supreme Court did not rely on or refer to federal statutory or constitutional law. It stated that the right to counsel guaranteed by the PCHA could be denied "*only* where a previous *PCHA petition* involving the same issues has been determined adversely to the petitioner in a *proceeding on the PCHA petition.* . . ." *Ibid.* (emphasis added). Finley had not previously filed a PCHA petition and therefore had a right to counsel. The State Supreme Court instructed that appointed counsel was not to limit his or her efforts to the claims raised by Finley, but should "explore legal grounds for complaint, investigate underlying facts" and "articulate claims for relief." The trial court was further instructed to allow counsel to amend the petition. 497 Pa., at 334–335, 440 A. 2d, at 1184–1185.

On remand, Finley's counsel failed to meet these requirements. Appointed counsel read only the "Notes of Testimony" of the original trial and failed to indicate to the trial court how he had conducted an exhaustive research of the record. 330 Pa. Super., at 322–323, 479 A. 2d, at 572–573. Instead of filing a brief and amending the complaint, as the remand order required, he simply submitted a "no-merit" let-

ter describing his limited review, listing the identical issues that were previously presented to the Pennsylvania Supreme Court on both direct appeal and on collateral attack, and stating why he regarded those claims as meritless.[1] Finley did not receive advance notice from either the court or her counsel that the latter was filing a letter maintaining that all her claims were without merit. Tr. of Oral Arg. 17. Indeed, there is no evidence that Finley ever received a copy of the letter. The attorney also failed to inform Finley of her right to seek new counsel or to proceed *pro se* before the trial court. 330 Pa. Super., at 320–321, 323, 479 A. 2d, at 571, 573. After receiving the no-merit letter, the trial court dismissed Finley's petition without a hearing. New counsel was appointed to represent Finley in the appeal of the dismissal.

The Superior Court reversed, noting that the trial court had failed to follow the required instructions of the State Supreme Court's remand, which were based on its interpretation of the PCHA. "The [Pennsylvania] Supreme Court remanded, not because it saw any particular merit to the [contentions raised at that time], which were identical to those disposed of earlier in appellant's direct appeal. . . . The Supreme Court wished to afford appellant the opportunity to amass other issues with arguable merit. . . ." 330 Pa. Super., at 321, 479 A. 2d, at 571–572.

The Superior Court cited to Rule 1504 of the Pennsylvania Rules of Criminal Procedure as a basis for the earlier remand order. That Rule requires counsel to "act as an advocate in fulfilling his role." 330 Pa. Super., at 321, 479 A. 2d, at 572. The Superior Court stated that Finley's appellant counsel was able to list several issues "which may have arguable merit" simply by reviewing the " 'bare record available in the

---

[1] The Superior Court noted that counsel gave an incorrect explanation of one of these two issues in his evaluation of why these issues were meritless. 330 Pa. Super., at 323, n. 4, 479 A. 2d, at 573, n. 4.

Superior Court.'" *Id.*, at 323, 479 A. 2d, at 572–573 (citing Brief for Appellant).[2] Thus, the trial court's failure to require a submitted brief and an amended complaint did not satisfy the mandate of the State Supreme Court that effective counsel be provided for Finley's first PCHA petition. Since trial counsel had failed to amend the petition or submit a brief, "the proceeding was in fact uncounselled" under Pennsylvania law. *Id.*, at 321, 479 A. 2d, at 572 (citation omitted).

This reliance on state grounds independently and adequately justified the Superior Court's remand. There is no need for a plain statement indicating the independence of the state grounds since there was no federal law interwoven with this determination. See *Michigan* v. *Long*, 463 U. S. 1032, 1041 (1983). Indeed, the Superior Court referred to state law with the very purpose of basing the reversal of the trial court's decision on grounds independent of both *Anders* and *McClendon.* 330 Pa. Super., at 321–322, 479 A. 2d, at 571–572. As a result, the Court has no need to address the issue of what general requirements govern representation in collateral proceedings in Pennsylvania, much less whether *Anders* is applicable.

## II

The *Anders* issue is not ripe for review for yet another reason. The Superior Court's decision leaves the trial court discretion on remand to impose the requirements of either *Anders* or *McClendon,* so long as it also complies with the requirements imposed by the original remand order by the Pennsylvania Supreme Court. See 330 Pa. Super., at 322,

---

[2] Finley's appellate counsel raised a number of issues of arguable merit that establish Sixth Amendment violations of ineffective assistance of counsel. See Brief for Respondent 15, n. 7.

479 A. 2d, at 571.[3] Because the trial court had satisfied neither the requirements of *Anders* nor *McClendon*,[4] the Superior Court remanded the case and did not specify which set of procedures the trial court was to follow.[5]

It is more than conjecture that the *Anders* requirements may never be imposed in this case, given the alternative availability of *McClendon* as a source of duties in Pennsylvania. After the present case was decided, the Superior Court held that the *McClendon* procedures—*not* the *Anders* requirements—are required on collateral review. *Commonwealth* v. *McGeth*, 347 Pa. Super. 333, 344–345, 500 A. 2d 860, 866 (1985). The Pennsylvania Supreme Court has never held that *Anders* procedures are required on collateral review. In *Commonwealth* v. *Lowenberg*, 493 Pa. 232, 235, 425 A. 2d 1100, 1101–1102 (1981), the State Supreme Court was equally divided on this issue and therefore affirmed the lower court ruling that the *Anders* procedures are required

---

[3] The Superior Court acknowledged that Pennsylvania appellate courts do not always require that trial courts follow the *Anders* procedure, but may allow the appointed counsel to withdraw if the lower court complies with the alternative requirements enunciated by the Pennsylvania Supreme Court in *Commonwealth* v. *McClendon*, 495 Pa. 467, 434 A. 2d 1185 (1981). 330 Pa. Super., at 320, 479 A. 2d, at 571 ("[C]ompliance was unnecessary" if counsel conducted an exhaustive examination of the record and the lower court concludes that the petitioner's claims are completely frivolous).

[4] The Superior Court found that the *McClendon* requirements were not satisfied. "Here, there is no mention of an exhaustive search nor the required finding that the case is wholly frivolous. Counsel must certify to an exhaustive reading and endeavor to uncover all possible issues for review so that the frivolity of the appeal may be determined by the lower court, or . . . at the appellate level." 330 Pa. Super., at 322, 479 A. 2d, at 572 (footnotes omitted).

[5] The Superior Court's instructions to the trial court were as follows:

"Since the procedures utilized herein were defective, they acted to deprive appellant of her right to adequate representation. We remand for an evidentiary hearing on the claims raised in appellant's brief and any other issues discerned by counsel after an exhaustive search of the record in accordance with this opinion." *Id.*, at 323–324, 479 A. 2d, at 573.

*only* on direct appeal from a criminal conviction, and *not* on collateral review. Because Pennsylvania does not require that *Anders* be followed on collateral review, there is no occasion for today's decision.

It is also unnecessary to decide in this case the adequacy of the *McClendon* procedures. The Commonwealth does not oppose the imposition of the *McClendon* requirements. Indeed, the Commonwealth approves of the *McClendon* requirements as a "flexible and enlightened approach." Brief for Petitioner 18, n. 11. Since it is not clear that the parties in this case have adversarial legal interests, there is no case or controversy regarding the adequacy of *McClendon*. See *Steffel* v. *Thompson*, 415 U. S. 452, 460 (1974).[6]

In order to avoid issuing an advisory opinion, we should await a final judgment by a Pennsylvania court that requires the imposition of the *Anders* procedures.[7] Since review of the trial court's eventual decision may be sought later in both the state appellate courts and this Court, we should

---

[6] There are several additional reasons why the Court should not decide the validity of the *McClendon* requirements. First, any holding that determines the applicability of the *McClendon* requirements to collateral review proceedings is inappropriate because of the lack of a final judgment. Since the trial court has not yet chosen which procedure to follow, there is no final judgment or decree that we can review. Cf. *Republic Gas Co.* v. *Oklahoma*, 334 U. S. 62, 69–71 (1948). Second, the validity of the *McClendon* requirements is not at issue in this case, and is not briefed by the litigants. Third, the *McClendon* issue is not ripe for review. The trial court may decide not to impose the *McClendon* requirements, and thus any opinion on this issue is an impermissible advisory opinion.

[7] Such an approach is consistent with the past practices of the Court:

"It has long been this Court's 'considered practice not to decide abstract, hypothetical or contingent questions, . . . or to decide any constitutional question in advance of the necessity for its decision, . . . or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, . . . or to decide any constitutional question except with reference to the particular facts to which it is to be applied . . . .'" *Public Workers* v. *Mitchell*, 330 U. S. 75, 90, n. 22 (1947); see also *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 510 (1975) (REHNQUIST, J., dissenting).

avoid prematurely reversing the decision of an inferior state court.[8]   Thus, I would dismiss the petition as improvidently granted.

### III

I also disagree with the Court's holding that trial counsel's abandonment of his client without notice and his advocacy against Finley's petition did not violate her federal rights to due process and equal protection.   The Court denigrates Finley's right to effective assistance of counsel by noting that this case involves only postconviction review by a trial court. It argues that such review is similar to discretionary appellate review, for which appointment of counsel is not required by the Federal Constitution under *Ross* v. *Moffitt,* 417 U. S. 600, 621 (1974).   See *ante,* at 555.   This case, however, is readily distinguished from *Ross.*   Under state law, Finley has a *mandatory* right to *effective* assistance of counsel, and the trial court is *required* to review the issues of arguable merit.

In construing the PCHA legislation, the Pennsylvania Supreme Court concluded:

> "We pause to note that the mandatory appointment requirement is a salutary one and best comports with efficient judicial administration and serious consideration of a prisoner's claims.   Counsel's ability to frame the issues in a legally meaningful fashion insures the trial court that all relevant considerations will be brought to its attention. . . ."   *Commonwealth* v. *Mitchell,* 427 Pa. 395, 397, 235 A. 2d 148, 149 (1967).

---

[8] In the instant case, the Commonwealth sought discretionary review of the Superior Court's decision in the Pennsylvania Supreme Court.   Review was granted, and the matter was briefed and argued.   The court, however, ordered that the appeal be dismissed "as having been improvidently granted."   510 Pa. 304, 507 A. 2d 822 (1986).   Under Pennsylvania law, the State Supreme Court's refusal to review is not a decision on the merits.   See *Commonwealth* v. *Britton,* 509 Pa. 620, 506 A. 2d 895 (1986); *Dayton* v. *Dayton,* 509 Pa. 632, 506 A. 2d 901 (1986).

The Pennsylvania Legislature recognized the importance of collateral review by adopting the PCHA, which requires effective assistance of counsel. 330 Pa. Super., at 321, 479 A. 2d, at 572. An appointed counsel's determination that a petitioner's claims have no merit may completely preclude consideration of meritorious claims. Pennsylvania law allows summary dismissal, without appointment of counsel, of petitions which raise claims that were the subject of previous PCHA petitions. Pa. Rule Crim. Proc. 1504.[9]

The Court justifies its holding on the ground that a State may refuse indigent prisoners any assistance of counsel and therefore has the lesser power to deliver inadequate legal services. But it has long been settled that even if a right to counsel is not required by the Federal Constitution, when a State affords this right it must ensure that it is not withdrawn in a manner inconsistent with equal protection and due process. See *Evitts* v. *Lucey*, 469 U. S. 387, 400 (1985); *Ross* v. *Moffitt, supra; Johnson* v. *Avery*, 393 U. S. 483, 488 (1969); *Smith* v. *Bennett*, 365 U. S. 708, 713 (1961).

"'Due process' emphasizes fairness between the State and the individual dealing with the State." *Ross* v. *Moffitt, supra*, at 609. "[F]undamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system.'" *Ake* v. *Oklahoma*, 470 U. S. 68, 77 (1985) (citation omitted). In my view, the Federal Constitution requires that the *Anders* procedures must be followed when a State provides assistance of counsel in collateral proceedings. As the Court previously explained:

> "This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant

---

[9] This right to counsel on collateral review is of special significance to Finley because the Superior Court found several arguably meritorious issues which indicate that effective assistance of counsel was not rendered both in the trial that resulted in her conviction and in the handling of the postconviction petition. 330 Pa. Super., at 322–323, 479 A. 2d, at 572–573.

is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled." *Anders* v. *California*, 386 U. S., at 745.

Even if the *Anders* requirements were not mandated by due process, the performance of Finley's counsel clearly violated minimal standards of fundamental fairness. At a minimum, due process requires that counsel perform as an advocate. The "very premise of our adversarial system . . . is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring* v. *New York*, 422 U. S. 853, 862 (1975). It is fundamentally unfair for appointed counsel to argue against his or her client's claims without providing notice or an opportunity for that client either to proceed *pro se* or to seek the advice of another attorney. "It is one thing for a prisoner to be told that appointed counsel sees no way to help him, and quite another for him to feel sandbagged when counsel appointed by one arm of the government seems to be helping another to seal his doom." *Suggs* v. *United States*, 129 U. S. App. D. C. 133, 136, 391 F. 2d 971, 974 (1968). Indeed, even the Commonwealth concedes that "due process requires that the attorney conduct a conscientious and meaningful review of the case and the record." Tr. of Oral Arg. 14. The Superior Court's criticism of the trial counsel's review of the record as insufficient was in those terms, since Finley's appellate counsel was able to list several issues of

arguable merit based on the "bare record available in the Superior Court." 330 Pa. Super., at 323, 479 A. 2d, at 572.

The performance of Finley's counsel also violated the Equal Protection Clause. Equal protection demands that States eliminate unfair disparities between classes of individuals. There is no rational basis for assuming that petitions submitted by indigents for collateral review will be less meritorious than those of other defendants. It is hard to believe that retained counsel would file a letter that advocates dismissal of a client's case without notice to the client and without conducting a conscientious assessment of the record. Since an impoverished prisoner must take whatever a State affords, it is imperative that the efforts of court-appointed counsel be scrutinized so that the indigent receives adequate representation. Equal protection therefore requires the imposition of the *Anders* requirements. Otherwise, "[t]he indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual," while a person who can afford it obtains meaningful review. *Douglas* v. *California*, 372 U. S. 353, 358 (1963).

IV

The Court transforms Finley's right to effective counsel into a right to a meaningless ritual.[10] In the face of the identification by the Superior Court of three possible means of ensuring adequate representation, the Court was without jurisdiction to render its decision. "Respect for the independence of state courts, as well as avoidance of rendering advisory opinions, have been the cornerstones of this Court's refusal to decide cases where there is an adequate and independent state ground." *Michigan* v. *Long*, 463 U. S., at

---

[10] I disagree with the Court's interpretation that the Commonwealth's obligations, as a matter of state law, were conclusively determined by the trial court. In my view, therefore, today's holding does not preclude a determination of this case under the Commonwealth's own laws and Constitution. See *South Dakota* v. *Opperman*, 428 U. S. 364, 396 (1976) (MARSHALL, J., dissenting).

1040. I would therefore dismiss the petition as improvidently granted.

I respectfully dissent.

JUSTICE STEVENS, dissenting.

Without bothering to identify the basis for federal jurisdiction in this case, the Court blithely assumes that the decision below does not rest on an independent and adequate state ground. I cannot agree. State procedural rules are often patterned after federal precedents, but they are, nonetheless, rules of state law. In this case, the Pennsylvania Superior Court explicitly stated that it was applying *"Pennsylvania law* concerning procedures to be followed when a court-appointed attorney sees no basis for an appeal." 330 Pa. Super. 313, 318, 479 A. 2d 568, 570 (1984) (emphasis added). As for federal precedents, the court simply noted that state law in the area was "derived from" this Court's 1967 decision in *Anders* v. *California,* 386 U. S. 738. Thus, I believe that the "plain statement" test of *Michigan* v. *Long,* 463 U. S. 1032, 1037–1044 (1983), is satisfied, and that the decision on review rested on independent and adequate state grounds. Moreover, it seems rather clear to me, for the reasons stated in Part I of JUSTICE BRENNAN's dissent, that the decision below did not rest alone on that portion of the discussion which could conceivably be considered to be based on *Anders.* See *ante,* at 561–563. In either event, there is no basis for concluding that the Pennsylvania Superior Court's decision to remand this case stemmed from its belief that the Federal Constitution required it to do so.

But even if I believed that the court relied on some federal precedents, and that the sacrosanct "plain statement" were missing, I would still conclude that this Court lacks jurisdiction over the case. It is unrealistic—and quite unfair—to expect the judges in the Philadelphia office of the Superior Court of Pennsylvania to acquire and retain familiarity with this Court's jurisprudence concerning the intricacies of our own jurisdiction. The occasions on which the decisions of

the judges in that office will be subject to direct review by the Supreme Court of the United States are far too rare to make it appropriate for them to become familiar with the *Michigan* v. *Long* presumption. It is denigrating enough to require the justices of the 50 State Supreme Courts to include such a statement in their decisions, without demanding the same of the 716 state appellate judges or all 20,000 state-court judges who decide cases that could conceivably be reviewed by this Court.*

Before the Commonwealth of Pennsylvania petitioned this Court for a writ of certiorari, it sought review of the Superior Court's judgment in the Supreme Court of Pennsylvania. Had it not done so, this Court could not have accepted jurisdiction of the petition because cases originating in a state court may not be reviewed here unless the judgment was "rendered by the highest court of a State in which a decision could be had." 28 U. S. C. § 1257. When the Pennsylvania Supreme Court dismissed the Commonwealth's appeal as improvidently granted, it did not accompany its order with any statement of reasons. We thus have no way of knowing whether its action was based on a correct interpretation of Pennsylvania law or an incorrect interpretation of federal law.

In my opinion, due respect for the courts of the States, as well as our separate interest in the "avoidance of rendering advisory opinions," *Michigan* v. *Long, supra,* at 1040, strongly favors the former presumption. I would not take yet another step down the jurisdiction-expanding path marked by *Michigan* v. *Long,* see *Delaware* v. *Van Arsdall,*

---

*These figures are based on 1984 statistics as reported in two recent publications. See Conference of State Court Administrators and the Court Statistics and Information Project of the National Center for State Courts, R. Roper, M. Elsner, & V. Flango, 1984 State Appellate Court Jurisdiction Guide for Statistical Reporting 5–9 (1985) (figure for appellate judges); National Center for State Courts, State Court Caseload Statistics: Annual Report 1984, pp. 195–248 (June 1986) (figure for all judges).

475 U. S. 673, 689 (1986) (STEVENS, J., dissenting).   Instead, I would dismiss the writ for want of jurisdiction.

I respectfully dissent.