**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 4, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COREY DUANE HAMILTON,

        Plaintiff-Appellant,

v.

JUSTIN JONES, Director, Oklahoma
Department of Corrections; MARTY
SIRMONS, Warden, Oklahoma State
Penitentiary; W. MARK LUTTRULL,
ROBERT L. RAINEY, EARNEST D.
WARE, DAVID C. HENNEKE,
TED LOGAN, BEVERLY YOUNG,
and ERNEST GODLOVE, Oklahoma
Board of Corrections; JOHN DOES,
Unknown Executioners,

        Defendants-Appellees.

No. 06-6381

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 06-CV-1193-F)**

---

Robert R. Nigh, Jr. of Brewster & DeAngelis, P.L.L.C., Tulsa, Oklahoma, for
Plaintiff-Appellant.

Jennifer J. Dickson, Assistant Attorney General (W.A. Drew Edmondson,
Attorney General of Oklahoma, with her on the brief), Oklahoma City, Oklahoma,
for Defendants-Appellees.

---

Before **TACHA**, Chief Judge, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

**PER CURIAM**.

The State of Oklahoma has scheduled plaintiff Corey Duane Hamilton for execution by lethal injection on January 9, 2007. Hamilton's first-degree murder conviction and death sentence were affirmed on direct appeal, *Hamilton v. State*, 937 P.2d 1001 (Okla. Crim. App. 1997), *cert. denied*, 522 U.S. 1059 (1998), and have withstood federal constitutional challenge in federal habeas proceedings, *Hamilton v. Mullin*, 436 F.3d 1181 (10th Cir.), *cert. denied*, 127 S. Ct. 560 (2006). On October 27, 2006, he commenced this action under 42 U.S.C. § 1983 to challenge the lethal injection protocol to be used for his execution. After an evidentiary hearing on December 28, 2006, the district court denied Hamilton's request for a preliminary injunction to forestall his execution under the protocol. Hamilton then filed this appeal and, in association therewith, moved for a stay of his execution. We exercise jurisdiction under 28 U.S.C. § 1292(a)(1), affirm the denial of injunctive relief, and deny the motion for stay.[1]

We review the district court's order for an abuse of discretion. *Bowersox v. Williams*, 517 U.S. 345, 346 (1996) (reviewing order involving stay of execution); *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1299 (10th Cir. 2006) (reviewing

---

[1]     Pursuant to Fed. R. App. P. 35, the panel circulated this opinion to the active judges of the court for sua sponte consideration of whether en banc review was necessary. No active judge called for a poll.

denial of preliminary injunction). "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill v. McDonough*, 126 S. Ct. 2096, 2104 (2006). The inmate must, in addition, satisfy a temporal concern of unique significance in this context: "A court considering a stay [of execution] must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). Here, the district court denied relief based both on Hamilton's delay in bringing his constitutional challenge to the lethal-injection protocol and on his failure to demonstrate a likelihood of success on the merits of that challenge. We cannot say the district court abused its discretion in either respect.

Hamilton unreasonably delayed in two ways. First, despite knowing that he faced death by lethal injection and being aware of legal challenges to various lethal-injection protocols, he waited years to pursue any state administrative remedy in this regard.[2] Second, after exhausting that remedy in May 2006, he waited five more months to file this action. This court has taken a strict stance on

---

[2]    Counsel conceded at argument that there is no legal impediment under state law to pursuit of lethal-injection challenges prior to the setting of an execution date. *See, e.g.*, *Malicoat v. State*, 137 P.3d 1234, 1235 (Okla. Crim. App. 2006).

inmate delay in this context and has, in fact, invoked the presumption recognized in *Nelson* and *Hill* in similar circumstances where only the first type of delay noted here was evident, *see Patton v. Jones*, 193 F. App'x 785, 788-89 (10th Cir.) (unpub.), *cert. denied*, 127 S. Ct. 28 (2006). While we are not bound by the unpublished panel decision in *Patton*, we see no reason to diverge from its substance here. Hamilton contends that his delay was reasonable in that he did not feel capable of pursuing this matter until he secured present counsel to initiate it, but the district court did not abuse its discretion in concluding that this explanation was inadequate. Nothing prevented Hamilton from timely initiating an action pro se and asking the court to appoint counsel to assist him, and review of the administrative grievance he submitted suggests no reason to doubt his ability to accomplish this.

Turning to the merits, the Constitution does not require the use of execution procedures that may be medically optimal in other contexts. Rather, the controlling standard is that such procedures "not involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Oklahoma's lethal-injection protocol provides in pertinent part that (1) bilateral intravenous fluid drips ("IVs") will be established in the veins of the inmate's arms by "an EMT-P or person with similar qualifications and expertise in IV

-4-

insertion,"[3] (2) the EMT-P "will ensure the patency [of the IV] until the time of execution by slow infusion of normal saline or dextrose," (3) the drugs are then introduced bilaterally, starting with 1200 mg doses of sodium thiopental, an ultra-fast-acting barbituate, to anesthetize the inmate and render him unconscious, followed two and one-half minutes later by 20 mg doses of vecuronium bromide to induce paralysis, and then 100 mg doses of potassium chloride to stop the heart and cause death; and (4) if only one IV can be established and confirmed as patent, both doses of each drug are administered serially through that IV. R. doc. 1, Ex. 2 at 3-4. In *Patton*, this court concluded based on expert testimony that has been incorporated in the record for this case "that [the plaintiff] has failed to establish a significant possibility of success on the merits of his Eighth Amendment claims" and, consequently, that he could not "overcome the presumption created by [his] late filing of his § 1983 action." *Patton*, 193 F. App'x at 790 (quotation omitted). Again, we see no reason to diverge from the result in that case here.

The district court concluded that the expert testimony presented simply could not demonstrate a risk of harm of constitutional magnitude; in particular, that testimony did not effectively challenge the protocol elements outlined above.

---

[3]    In the event IV access cannot be established in the veins of the arms, a physician is present who will gain access through a central line, i.e., an artery elsewhere in the body such as the leg.

The primary criticism voiced by the experts concerned the absence of any provision for monitoring the inmate for signs that the sodium thiopental is in fact reaching him and effecting anesthetization. In light of the precautions already built into the protocol, the district court concluded that the risk of failure that this kind of monitoring would address was simply far too remote to rise to a constitutional level so as to require that it be done in connection with executions. Thus, while monitoring of anesthetization level is the optimal practice appropriate for a surgical operating room (where, significantly, lower doses of anesthetic are used in order to minimize post-surgical "emergence" complications that have no counterpart in the execution setting), the risk inherent in the lethal-injection procedure under review is already so attenuated that we cannot say there is a significant likelihood that a challenge to the protocol under the minimal requirements imposed by the Eighth Amendment on executions could succeed on our record.

The additional evidence adduced by Hamilton at the December 28 hearing does not undermine that conclusion. The focus of the new evidence was a recent execution in Florida that, by credible accounts, was botched because the needles used for the IVs had been pushed completely through the inmate's veins. *See generally* Fla. Exec. Order No. 06-260 (halting further executions and creating commission to study state lethal-injection protocol following execution of Angel Nieves Diaz on December 13, 2006). The district court properly discounted the

present materiality of that unfortunate incident, noting that the Florida protocol made no provision for the qualifications of the person(s) responsible for establishing and confirming the patency of the IV, while the Oklahoma protocol places this responsibility in the hands of an EMT-P, a professional expressly recognized as fully qualified for this purpose by the experts in this case. In short, the risk exposed by the Florida tragedy is a risk that Oklahoma, unlike Florida, has specifically addressed in its protocol.

In sum, Hamilton has not overcome the strong presumption applicable here against interference with the State's recognized interest in timely carrying out the final judgment rendered in his criminal prosecution, nor has he shown a substantial likelihood of prevailing on the merits of his constitutional challenge to the lethal-injection procedure to be followed in his execution. Accordingly, the district court did not abuse its discretion in denying injunctive relief, and we find no basis for staying Hamilton's execution.

Hamilton's request for oral argument is GRANTED, the district court's order denying Hamilton's motion for a preliminary injunction is AFFIRMED, and Hamilton's motion for stay of execution is DENIED. The motion to file certain portions of the record under seal is GRANTED. Hamilton's motion for leave to proceed in forma pauperis is GRANTED.