FILED
United States Court of Appeals
Tenth Circuit

June 17, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RONNIE LEE GARDNER,

      Plaintiff-Appellant,

v.

CURTIS GARNER, Chairman,
Utah Board of Pardons and Parole;
CLARK A. HARMS, Vice-Chairman,
Utah Board of Pardons and Parole;
JESSE GALLEGOS, Member, Utah
Board of Pardons and Parole; IRIS E.
HEMENWAY, Member Pro Tempore,
Utah Board of Pardons and Parole;
DONALD E. BLANCHARD, Member
Pro Tempore, Utah Board of Pardons
and Parole; MARK L. SHURTLEFF,
Utah Attorney General,

      Defendants-Appellees.

No. 10-4106
(D.C. No. 2:10-cv-00537-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

---

[*]    Counsel for Mr. Gardner has informed the court that he stands on the argument set out in the application for stay submitted in conjunction with this appeal and will not be filing a separate appellate brief. Upon consideration of the application and associated materials, this court has determined that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. Ap. P. 32.1 and 10th Cir. R. 32.1.

Before **TACHA**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

_____

Plaintiff Ronnie Lee Gardner is a death row inmate scheduled for execution by the State of Utah on June 18, 2010. He brought this action in district court under 42 U.S.C. § 1983 to challenge the procedural propriety of his clemency proceeding before the Utah Board of Pardons and Parole ("Board"), which has denied his application for commutation of sentence. In connection with this § 1983 action, Mr. Gardner also sought a stay of his execution. The district court denied the stay without resolving the underlying § 1983 action. Mr. Gardner now appeals that ruling and seeks a stay of execution pending appeal. We affirm the district court's order and deny a stay pending appeal as moot.

The complaint, filed prior to the hearing and resolution of his application for commutation, formally set out six claims, though these fell into just three substantive categories: (1) the clemency proceeding is tainted by a conflict of interest, because the Utah Attorney General serves as legal advisor to the Board while also representing the State in opposing the clemency application, violating Mr. Gardner's federal procedural due process and substantive due process rights (claims one and two), as well as his state due process rights (claim three); (2) the Board indicated that it would not consider a videotape offered by Mr. Gardner containing statements from two witnesses, in violation of his federal procedural due process and state due process rights (claims four and five); and (3) the Board

has acted so as to deny Mr. Gardner meaningful representation by his federally appointed counsel, violating his federal right to procedural due process (claim six). The Board ultimately decided to allow admission of the videotape, mooting claims four and five. Mr. Gardner's application for a stay of execution therefore rested on the due process objection advanced in claims one through three and the objection regarding meaningful assistance of counsel in claim six.

## I. Threshold Matters and Standard of Review

Before reaching the merits of this appeal, we note two threshold procedural points. First, there is some question whether a § 1983 action is the proper vehicle for bringing a procedural challenge to state clemency proceedings, or whether, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), such an action under § 1983 should be deemed an improper circumvention of habeas proceedings. *Compare Woratzeck v. Arizona Board of Executive Clemency*, 117 F.3d 400, 402-03 (9th Cir. 1997) (upholding use of § 1983 for this purpose where, as here, the relief sought would not directly affect capital sentence but only require state authority to consider clemency under proper procedures), *with Spivey v. State Bd. of Pardons & Paroles*, 279 F.3d 1301, 1302-03 (11th Cir. 2002) (deeming use of § 1983 action in this context to be mere incidental means to primary end of defeating orderly effectuation of capital sentence and holding habeas to be proper, and hence exclusive, remedy). This circuit has not definitively addressed the question. We did review on the

merits a § 1983 action challenging clemency proceedings in *Duvall v. Keating*, 162 F.3d 1058 (10th Cir. 1998), just as the Supreme Court had recently done in *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998), though in neither case was the *Heck* issue expressly considered. In any event, we have held that the application of *Heck* to a § 1983 action is not a matter of jurisdiction and hence need not be resolved where the § 1983 claims may be resolved on the merits. *See Jiron v. City of Lakewood*, 392 F.3d 410, 413 n.1 (10th Cir. 2004) (following *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999)). Particularly given the exigency of this proceeding, we follow that course here.

Second, although the underlying § 1983 action has not been resolved, we have jurisdiction to review the denial of Mr. Gardner's application for a stay of execution. The application is the functional equivalent of a motion to temporarily restrain or preliminarily enjoin his execution, the denial of either of which would be subject to appellate review given the exigent circumstances, *Hamilton v. Jones*, 472 F.3d 814, 815 (10th Cir. 2007); *Duvall*, 162 F.3d at 1062. Other courts as well have heard similar appeals in just these circumstances without any concern over fine formalistic distinctions regarding the label applied to the motion seeking to forestall execution. *See, e.g.*, *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1033 (11th Cir. 2001) (appeal from denial of motion "for a temporary restraining order ("TRO"), preliminary injunction, and/or stay of execution" in action challenging propriety of clemency proceeding); *Woratzeck*,

117 F.3d at 402 (appeal from denial of capital offender's motion "for a temporary restraining order ("TRO") and stay of his execution").

We review the district court's order for an abuse of discretion. *Hamilton*, 472 F.3d at 815. To obtain a stay of his execution, Mr. Gardner had to satisfy all of the traditional requirements for a stay, "including a showing of a significant possibility of success on the merits" of his underlying claims. *Id.* (quotation omitted). Where the claims are found to be without merit, we will affirm the denial of the stay. *See Duvall*, 162 F.3d at 1062. That is the case here.

## II. Merit of Underlying Challenge to Clemency Proceeding

There is no constitutional right to clemency proceedings. *Duvall*, 162 F.3d at 1060 (citing *Herrera v. Collins*, 506 U.S. 390, 414 (1993)). But a state may elect to provide such proceedings and, in that event, following "the [Supreme] Court's narrowest majority holding [in *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998)], we assume that some minimal level of procedural due process applies." *Duvall*, 162 F.3d at 1061. This "minimal application of the Due Process Clause only ensures a death row prisoner [1] that he or she will receive the clemency procedures explicitly set forth by state law, and [2] that the procedure followed in rendering the clemency decision will not be wholly arbitrary, capricious or based upon whim, for example, flipping a coin." *Id.* at 1060. Further, "our review is limited to analyzing the procedures used during the clemency proceedings and not the substantive merits of the clemency decision."

*Id.* Applying these standards, we conclude that Mr. Gardner has wholly failed to demonstrate a cognizable challenge to the clemency proceedings in his case and, therefore, is not entitled to a stay of execution.

## A. Impartial Hearing – Conflict of Interest

As Mr. Gardner notes, "[o]ffenders are entitled to an impartial hearing before the Board." Utah Admin. R. 671-309-1. He claims that this procedural entitlement was violated by a conflict of interest arising from the dual role played by the office of the Utah Attorney General ("AG") with respect to his clemency proceedings. Specifically, he complains that while one attorney in the AG's office, Thomas Brunker, appeared before the Board in opposition to his petition for commutation, another, Michelle Young, engaged in *ex parte* communications with the Board, providing advice with respect to evidentiary and procedural matters.[1]

The allegations regarding Ms. Young's contacts with the Board that are set out in the complaint are fairly innocuous:

> After the pre-hearing conference, Assistant Attorney General
> Michelle Young consulted with [the] Board regarding the rules that

---

[1]     Mr. Gardner's complaint also appears to object to the bald fact that the AG provides legal representation for the Board as a general matter. But AGs and United States Attorneys routinely provide legal representation for courts and judicial officers, *see, e.g.*, *Smith v. U.S. Court of Appeals*, 484 F.3d 1281, 1283 (10th Cir. 2007); *Switzer v. Coan*, 261 F.3d 985, 987 (10th Cir. 2001), without creating due process problems regarding their prosecutorial activities in the same jurisdictions. Surely no such problems arise in this regard under the far less stringent due process standards applicable to clemency proceedings.

-6-

would be applicable to commutation proceedings. Following this *ex parte* communication, Ms. Young informed Plaintiff's counsel of the applicable rules. When Plaintiff asked the Board for clarification of the rules, Michelle Young was the person who responded.

When Plaintiff asked the Board to reconsider its interim order barring the consideration of videotaped statements, Ms. Young responded to Plaintiff's request.

Based on further *ex parte* communications with the Board, Ms. Young expressed the Board's desire for additional information about Plaintiff's request.

Complaint at 6. Were we reviewing a judicial proceeding, any *ex parte* communications, even of the purely procedural sort described above, would of course be a matter of concern. But, again, the minimal due process constraints on clemency proceedings are far more limited. We must focus solely on the Board's compliance with its own rules and its avoidance of wholly arbitrary or capricious action. Here, the very rule Mr. Gardner relies on does "*not* preclude [*ex parte*] contact regarding procedural matters so long as such contact is not for the purpose of influencing the decision of an individual Board Member on any particular case or hearing." Utah Admin. R. 671-309-1 (emphasis added). The allegations quoted above do not demonstrate a violation of the Board's rule. Nor do they reflect action that could be characterized as wholly arbitrary or capricious. Thus they do not provide the basis for an actionable due process claim.

We note, however, that in Mr. Gardner's application for stay of execution, he ascribed a more active role to Ms. Young: she assertedly "provided legal

advice to the Board about what procedures to apply to Mr. Gardner's petition and what evidence should be considered. Ms. Young had an extensive role in advising the Board regarding the rules that should be applied to Mr. Gardner's commutation proceedings."[2] Application for a Stay of Execution at 6 (filed June 14, 2010). But even this assertion fails to identify a single procedural or evidentiary position taken by the Board *as a result of Ms. Young's advice*, much less how that position played a materially adverse role in the Board's ultimate decision. This point is especially salient in light of the Board's eventual election to admit the videotaped statements that were the focus of Mr. Gardner's pre-hearing evidentiary efforts.

In short, Mr. Gardner utterly fails to demonstrate any prejudice from the asserted conflict to his right to an impartial hearing. At most he raises a theoretical "appearance of impropriety"–a weak predicate for a due process claim in this extra-judicial context. *See Gilreath v. State Bd. of Pardons and Paroles*, 273 F.3d 932, 934 (11th Cir. 2001) (emphasizing that "just an *appearance* of impropriety would not violate the Federal Constitution's due process clause in the

---

[2] Ms. Young submitted an affidavit in the district court that basically just confirmed the broad assertions made in Mr. Gardner's application for stay: she "advised the Board regarding applicable statutes, Board rules, and case law . . . limited to procedural matters, such as what materials the Board may consider when determining whether to grant a hearing and/or whether to grant commutation." Declaration of Michelle Young at 2. She added that she "never discussed substantive matters such as whether Mr. Gardner should be afforded a commutation hearing or whether Mr. Gardner's commutation petition should be granted or denied." *Id.*

context of a clemency proceeding"). And even that appearance of impropriety is greatly attenuated by the fact that the AG set up an internal ethical screen between lawyers providing advice to the Board and lawyers handling the adversarial aspect of Mr. Gardner's commutation proceedings. Mr. Gardner complains that it appears this screen was not erected until a week after he filed his petition for commutation (though before the AG filed its response to the petition), but the alleged contacts between Ms. Young and the Board that he points to all occurred after that, following the pre-hearing conference.[3] Moreover, Ms. Young averred that she had been alerted about Mr. Gardner's imminent commutation application the day before it was even filed and, as a result, had thereafter "acted as if a formal conflict screen had been established." Declaration of Michelle Young at 2-3. Under the circumstances, we see no basis for an

_____

[3]     A petition for commutation must be filed no later than seven days after issuance of the warrant of execution. Utah Admin. Code R. 671-312-2(1). It must include "a statement of reasons or grounds" supporting clemency, *id.*, R. 671-312-2(4)(b), and "copies of all written evidence upon which petitioner intends to rely at the hearing along with the names of all witnesses petitioner intends to call and a summary of their anticipated testimony," *id.*, R. 671-312-2(4)(c). Within seven days of receiving the petition, the State, through the AG, must file a response with its own designation of witnesses and testimony. *Id.*, R. 671-312-2(7). The Board then holds "a pre-hearing conference to identify and set the witnesses to be called, clarify the issues to be addressed, and take any other action it considers necessary and appropriate to control and direct the proceedings." *Id.*, R. 671-312-2(8). The hearing itself is nonadversarial; cross-examination is not permitted, though "Board may ask questions freely of any witness, the petitioner, the petitioner's attorney, or the State's attorney." *Id.*, R. 671-312-2(10).

actionable due process claim under the minimal constitutional standard applicable in the clemency context.

## B. Denial of Meaningful Representation of Counsel

The primary basis for Mr. Gardner's initial claim that the Board had acted in a way that undermined the effectiveness of his counsel derived from the anticipated exclusion of the videotaped witness statements. Thus, when the Board ultimately elected to admit those statements, this claim lost much of its factual substance. In his application for stay of execution, Mr. Gardner was left to argue in rather vague and perfunctory terms that the belated notice that he would be allowed to offer the statements, the day before the clemency hearing, interfered with counsel's ability to prepare for the hearing. Given counsel's familiarity with the evidence, which he developed, this is a decidedly weak factual premise for a claim regarding ineffective representation.[4] In addition, and in any event, relevant legal principles foreclose an actionable challenge to his clemency proceeding premised on the inadequacy of his legal representation.[5]

---

[4]     We would also point out that although the time periods allotted for the preparation of a clemency case following issuance of the order of execution are fairly short, the undeniable reality of the situation is that eventual recourse to this procedure is a fact on the procedural horizon long before the execution process commences.

[5]     We note that the statutes and rules governing Utah's clemency procedures do not expressly grant a right to counsel, nor have we been made aware of any other state authority recognizing such a right. But Mr. Gardner's federal habeas counsel are authorized to represent him in clemency matters pursuant to 18 U.S.C.

(continued...)

The constitutional right to the effective assistance of counsel does not extend beyond direct appeal, even if state law provides for the appointment of counsel in post-conviction proceedings. *Thomas v. Gibson*, 218 F.3d 1213, 1222 (10th Cir. 2000) (following *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). The right is not extended beyond its limited confines, under the principle of a "state-created interest," when by statute or rule prisoners must be afforded representation in post-conviction matters. The Eighth Circuit cogently explained why in *Simpson v. Norris*, 490 F.3d 1029 (8th Cir. 2007). Drawing on the Supreme Court's holding in *Pennsylvania v. Finley*, 481 U.S. 551 (1987), that counsel need not, as a matter of due process, follow *Anders*[6] procedures when withdrawing from post-conviction representation, the Eighth Circuit explained:

> The [*Finley*] Court held that the *Anders* requirements were based on an indigent defendant's . . . right to counsel in a first appeal and that those requirements did not apply to the defendant since there was no constitutional right to counsel in a collateral attack on a conviction. The Court rejected the contention that a "right to counsel" created by a state gives rise to a constitutional guarantee: "[I]t is the source of the right to a lawyer's assistance, combined with the nature of the proceeding, that controls the constitutional question. In this case, respondent's access to a lawyer is the result of the State's decision, not the command of the United States Constitution." *Finley*, 481 U.S. at 555-56, 107 S.Ct. 1990. The Court further explained that "the State has made a valid choice to give prisoners the assistance of counsel [in post-conviction proceedings] without requiring the full panoply of procedural

---

[5](...continued)
§ 3599(a)(2), (e), as construed in *Harbison v. Bell*, 129 S. Ct. 1481 (2009).

[6]     *Anders v. California*, 386 U.S. 738 (1967).

protections that the Constitution requires be given to defendants who are in a fundamentally different position-at trial and on first appeal as of right." *Id.* at 559, 107 S.Ct. 1990. *The Supreme Court has thus left little doubt as to its view that a state's decision to grant a right to counsel in post-conviction proceedings does not give rise to a due process claim if counsel performs deficiently.*

*Simpson*, 490 F.3d at 1033-34 (emphasis added).

Against this background, we cannot say that the availability of federally funded habeas counsel to represent a capital offender in clemency proceedings affords a constitutional platform from which to launch a collateral due process challenge to such proceedings on the basis of the effectiveness of counsel's representation.[7] Nor do the rules governing Board procedures provide a right to counsel that might underwrite such a challenge. *See supra* note 5. Thus, the legal foundation for Mr. Gardner's claim here is as deficient as its factual basis.

## C. Substantive Due Process and State Constitutional Provisions

Mr. Gardner has not demonstrated a concrete material difference, under the circumstances of this case, between the federal and state constitutional provisions summarily invoked in his complaint. Given that omission, the Utah courts would not proceed beyond the federal analysis–under which his claims fail–in resolving his pendent state constitutional claims. *See State v. Kohl*, 999 P.2d 7, 12 n.3

---

[7] The authorities discussed above address the inapplicability of ineffective assistance principles in post-conviction proceedings, rather than in clemency proceedings per se. But we see no basis for holding that the latter–which involve discretionary executive acts rather than the judicial resolution of legal objections, *Duvall*, 162 F.3d at 1061–implicate any greater, rather than lesser, constitutional basis for recognition of claims relating to the effective assistance of counsel.

(Utah 2000); *Color Country Mgmt. v. Labor Comm'n*, 38 P.3d 969, 974 (Utah App. 2001). Nor will we.[8] He has also not explained how substantive due process principles would even apply to, much less bolster, the clearly procedural objections raised in this action.

### III. Conclusion

There is no merit to the claims asserted in the underlying § 1983 action challenging the procedures followed in Mr. Gardner's state clemency proceeding. In light of that fundamental deficiency, Mr. Gardner's associated application for a stay of his execution was also meritless and the district court did not abuse its discretion in denying the application.

Accordingly, we AFFIRM the district court's order denying a stay of execution.[9] In light of that disposition we DENY as moot Mr. Gardner's motion for a stay of execution pending resolution of this appeal. The mandate shall issue forthwith.

ENTERED FOR THE COURT
PER CURIAM

---

[8]    We also note in this regard that Mr. Gardner had the option to challenge the procedural propriety of the clemency proceedings in the Utah courts by way of a state habeas action, *see Preece v. House*, 886 P.2d 508, 512 (Utah 1994), but did not pursue this available state remedy.

[9]    Pursuant to Fed. R. App. P. 35, the panel circulated this decision to the active judges of the court for sua sponte consideration of whether en banc review was necessary. *See Hamilton*, 472 F.3d at 815 n.1. No active judge called for a poll.