# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2823

_____

Sedrice Maurice Simpson,          *
                                     *

        Appellant,       *
                                     *   Appeal from the United States

     v.                *   District Court for the
                                     *   Eastern District of Arkansas.

Larry Norris, Director,         *
Arkansas Department of Correction,  *
                                     *

        Appellee.        *

_____

Submitted: March 14, 2007
Filed: June 27, 2007

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Sedrice Simpson, a prisoner under sentence of death in the State of Arkansas, appeals the district court's denial of his petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254. We vacate the judgment and remand for further proceedings.

I.

Almost ten years ago, the H & H Grocery in Holly Springs, Arkansas, was robbed and the two store clerks working there, Wendy Pennington and Lena Garner, were shot and killed with a blast from a 12-gauge shotgun. Shortly after the shooting, Mr. Simpson went to see Bernard Gregory and left a 12-gauge shotgun with him;

Mr. Gregory saw blood on Mr. Simpson's right hand at that time. Mr. Simpson then went to the home of Frederick Wright and told Mr. Wright that he had just "shot two bitches"; Mr. Simpson also gave Mr. Wright some blood-covered money. After Mr. Simpson left the car that he had been driving at his mother's house, his mother reported to the police that two guns were missing from the car's trunk. Mr. Simpson was arrested, advised of his *Miranda* rights, and taken to jail. He then signed a waiver-of-rights form and gave a statement implicating his co-defendant, Ezekiel Harrison, in the killings.

Mr. Harrison pleaded guilty to second-degree murder and was sentenced to two consecutive twenty-year terms of imprisonment. At Mr. Simpson's trial, Mr. Harrison and Mr. Simpson both testified that the other one had killed the two victims. Mr. Harrison testified that he was outside pumping gas when Mr. Simpson, without telling Mr. Harrison, took the shotgun, went into the store, fired the shots, and came out of the store carrying the cash register drawer in his bloody hands. Mr. Simpson testified that he was outside putting air in a tire when Mr. Harrison, without telling Mr. Simpson, took the shotgun, went into the store, and fired the shots, after which he came out of the store with the cash register drawer. The jury evidently credited Mr. Harrison's story because it convicted Mr. Simpson of two counts of capital murder.

At the penalty phase of the trial, the jury found three aggravating factors: that the murders were committed for the purpose of avoiding or preventing an arrest; that the murders were committed for pecuniary gain; and that Mr. Simpson caused the death of more than a single person in the same criminal episode. The jury found no mitigating factors. Mr. Simpson was sentenced to death by lethal injection, and the Arkansas Supreme Court upheld his conviction on direct appeal, *Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999).

After exhausting his state post-conviction remedies, Mr. Simpson filed a petition for relief under § 2254(a), advancing eight claims. The district court denied the petition, *see Simpson v. Norris*, No. 04CV00429, 2006 WL 1520628 (E.D. Ark. May 30, 2006), but granted Mr. Simpson a certificate of appealability with respect to all eight claims; the defendant pursues six of these in this appeal. Mr. Simpson claims that his eighth amendment rights were violated when the state court refused to instruct the jury that Mr. Harrison's lesser sentence was a mitigating circumstance that could be considered in fixing Mr. Simpson's sentence. He also claims that he was denied his constitutional right to the effective assistance of state post-conviction counsel, and that his post-conviction counsel's ineffective assistance provided cause for procedural default of three additional constitutional claims. Finally, Mr. Simpson maintains that the district court erred in holding that an eighth amendment mental retardation claim based on *Atkins v. Virginia*, 526 U.S. 304 (2002), can be defaulted by an omission that occurred before *Atkins* was decided.

II.

Mr. Simpson argues that his eighth amendment right to be free from cruel and unusual punishment was violated when the trial court refused to instruct the jury that it could consider Mr. Harrison's sentence as a mitigating circumstance in sentencing Mr. Simpson. As we have said, before Mr. Simpson's trial, Mr. Harrison, who was initially charged with the capital murder of the two victims, entered a plea of guilty to two counts of second-degree murder and received a sentence of twenty years' imprisonment on each count; the sentences were to run consecutively. Mr. Simpson's attorney asked the trial judge for an instruction that "[c]o-defendant ... although initially charged with the capital murder of Garner, through a plea bargain with the State, plead [sic] guilty to Murder in the Second Degree ... and received a twenty (20) year sentence." Defense counsel asked for another, similar instruction to be given regarding the murder of Ms. Pennington. The state objected on the bases that Mr. Harrison's sentence was irrelevant to Mr. Simpson's guilt, innocence, and subsequent punishment, and that the requested instructions were misleading in failing

to say that Mr. Harrison's two sentences were to run consecutively. The trial court agreed with both of the state's arguments and refused to give the jury instructions. On direct appeal, the Arkansas Supreme Court agreed with the trial court's decision on both grounds. *Simpson*, 339 Ark. at 473-74, 6 S.W.3d at 109.

The provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern our review of the state court's decision. Under AEDPA, as relevant here, we cannot grant a writ of habeas corpus to Mr. Simpson unless the Arkansas courts' treatment of his federal claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). In interpreting this statute, the Supreme Court has held that a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

Mr. Simpson argues that refusing his proffered instructions was contrary to the principles established in *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982). In *Eddings*, the Supreme Court held that a sentencer cannot " 'be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' " *Id.* at 110 (quoting *Lockett*, 438 U.S. at 604 (plurality opinion)) (emphasis in *Lockett*). The Arkansas Supreme Court held that Mr. Harrison's sentence was not information that had to be submitted to the jury as a mitigating factor because Mr. Harrison's sentence did not shed light on Mr. Simpson's character, record, or the circumstances of the offense. This seems to us to be quite evidently correct, so we cannot conclude that the court's application of *Eddings* constituted a holding contrary to or involved an unreasonable application of clearly established federal law. We therefore reject this claim.

-4-

## III.

We turn now to Mr. Simpson's claim that the sixth and fourteenth amendments of the Constitution entitled him to effective assistance of counsel in his Arkansas capital post-conviction proceeding, that he received ineffective assistance, and that this provides cause for the procedural default of the rest of his claims.

In *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), the Court stated that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." The Court further observed that this rule had been applied to capital cases, *see Murray v. Giarratano*, 492 U.S. 1, 7, 10 (1989), and that where there is no constitutional right to counsel there can be no deprivation of effective assistance, *see Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam).

Mr. Simpson maintains, however, that because Arkansas Rule of Criminal Procedure 37.5 ("Special Rule for Persons Under Sentence of Death") required the state to appoint an attorney to represent him in post-conviction proceedings, the state had a duty to provide him with effective assistance of counsel and its failure to do so deprived him of due process. He relies on *Hicks v. Oklahoma*, 447 U.S. 343, 345-47 (1980), where the Supreme Court held that when state law guaranteed a convicted defendant that his punishment would be fixed by a jury, denying him this right was a deprivation of liberty without due process of law.

We disagree because we think that the Supreme Court essentially rejected this idea in a case similar to Mr. Simpson's. In *Pennsylvania v. Finley*, 481 U.S. 551 (1987), as here, counsel was provided to the defendant in state post-conviction proceedings as required by state law. The defendant's attorney in *Finley* was later permitted to withdraw after he concluded that there were no arguable bases for collateral review; the state court later dismissed the defendant's petition for post-conviction relief. After the state appellate court reversed the dismissal based on counsel's failure to follow the pre-withdrawal procedures set forth in *Anders v.*

-5-

*California*, 386 U.S. 738 (1967), the Supreme Court granted *certiorari* and reversed the state appellate court.  *Finley*, 481 U.S. at 553-54.

The Court held that the *Anders* requirements were based on an indigent defendant's fourteenth amendment right to counsel in a first appeal and that those requirements did not apply to the defendant since there was no constitutional right to counsel in a collateral attack on a conviction.  The Court rejected the contention that a "right to counsel" created by a state gives rise to a constitutional guarantee:  "[I]t is the source of the right to a lawyer's assistance, combined with the nature of the proceeding, that controls the constitutional question.  In this case, respondent's access to a lawyer is the result of the State's decision, not the command of the United States Constitution."  *Finley*, 481 U.S. at 555-56.  The Court further explained that "the State has made a valid choice to give prisoners the assistance of counsel [in post-conviction proceedings] without requiring the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position – at trial and on first appeal as of right."  *Id.* at 559.  The Supreme Court has thus left little doubt as to its view that a state's decision to grant a right to counsel in post-conviction proceedings does not give rise to a due process claim if counsel performs deficiently.

In addition, we have stated that *Hicks* "represent[s] a rather narrow rule:  some aspects of the sentencing process, created by state law, are so fundamental that the state must adhere to them in order to impose a valid sentence."  *Chambers v. Bowersox*, 157 F.3d 560, 565 (8th Cir. 1998), *cert. denied*, 527 U.S. 1029 (1999).  And we have distinguished *Hicks*, which "involved the violation of a state procedural rule concerning criminal sentencing, an area in which a defendant is entitled to constitutional protections," from "the alleged violation of a state rule concerning post-conviction proceedings, an area in which a defendant is not necessarily afforded constitutional protections."  *Smith v. Lockhart*, 882 F.2d 331, 334 (8th Cir. 1989), *cert. denied*, 493 U.S. 1028 (1990).  We also note that Rule 37.5 requires that attorneys

-6-

appointed to represent persons sentenced to death in post-conviction proceedings meet certain qualifications, and Mr. Simpson has not challenged his counsel's qualifications.

We therefore reject Mr. Simpson's claim that he was denied effective assistance of counsel.

## IV.

Mr. Simpson claimed for the first time in his § 2254 petition that his constitutional rights were violated at sentencing because neither the trial court nor trial counsel submitted relevant mitigating circumstances of impairment as a result of drug abuse or intoxication and "relatively minor participation"; because the jury found that no mitigating circumstances were presented when in fact they were; and because the trial court admitted irrelevant victim impact testimony. But he procedurally defaulted all three of these claims since he did not raise them in his state court post-conviction proceedings. And, as we have already said, he has no claim of ineffective assistance that would have provided cause and prejudice to defeat the procedural bar. *See Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991); *Interiano v. Dormire*, 471 F.3d 854, 856-857 (8th Cir. 2006). We reject these claims.

## V.

We now consider Mr. Simpson's final contention, namely that the district court erred in holding that he had defaulted an eighth amendment claim under *Atkins* that his mental retardation made him ineligible for the death penalty. The district court denied Mr. Simpson's *Atkins* claim without a hearing because "before trial, at trial, or in his post-conviction petition," he did not present a mental retardation defense to the death penalty (a defense that was available to him under state law, *see* Ark. Code § 5-4-618), *Simpson*, 2006 WL 1520628 at *10, and because he failed to show that "the facts underlying [his] claim would be sufficient to establish by clear and convincing evidence that but for constitutional error," 28 U.S.C. § 2254(e)(2)(B), "no reasonable

factfinder would have found him to be eligible for the death penalty under *Atkins*, *Simpson*, 2006 WL 1520628 at *12.

We think, contrary to the district court's holding, that the availability of a similar claim under Arkansas law is irrelevant to our consideration here: Mr. Simpson is raising a previously unavailable federal claim, and that claim is separate and distinct. We conclude, moreover, that because the state claim is distinct from the eighth amendment claim, the district court incorrectly required Mr. Simpson to meet the requirements of § 2254(e)(2) before holding an evidentiary hearing. By its terms, that section applies only if the petitioner "failed to develop the factual basis of [his] claim in State court," *id.*, and the Supreme Court has held that "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel," *Williams v. Taylor*, 529 U.S. 420, 431-32 (2000). Since *Atkins* created a previously unavailable claim based on the unconstitutionality of executing the mentally retarded, Mr. Simpson can hardly be said to have lacked diligence in developing the factual basis of that claim in state court.

Mr. Simpson asks us to remand his case to the district court for an evidentiary hearing. When the Supreme Court works a change in the law, the decision whether to remand a habeas corpus claim based on that change to the appropriate state court or to the federal district court hinges on whether the state court will entertain the claim. *Cf. Whippler v. Balkcom*, 342 F.2d 388, 390 (5th Cir. 1965); 17B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, *Federal Practice and Procedure* § 4264.4 (3d ed. 2007). The Arkansas Supreme Court has made it clear that it will not recall a mandate affirming a death sentence to consider a post-*Atkins* mental retardation claim when the defendant has failed to raise a mental retardation defense under the Arkansas statute. *See Coulter v. State*, 365 Ark. 262 (2006), 2006 WL 301082 (citing *Engram v. State*, 360 Ark. 140, 200 S.W.3d 367

(2004)). We therefore conclude that any remand here would have to be to the district court.

"Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court." *Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6 (1992). Mr. Simpson has alleged that he is mentally retarded as *Atkins* defines that condition, which would entitle him to relief, and that matter remains in dispute. Since his inability to present his *Atkins* claim in state court precluded him from receiving "a full and fair evidentiary hearing" there, he satisfies the conditions outlined in *Townsend*.

We therefore vacate the judgment of the district court and remand the case for further proceedings. We note that our reasoning closely parallels that of the Fourth Circuit in its decision to remand an *Atkins* claim in *Walker v. True*, 399 F.3d 315, 326-27 (4th Cir. 2005), where the petitioner likewise did not have the opportunity to present that claim in the state court.

On remand, the district court should give Mr. Simpson the chance to develop the factual basis of his claim and present it at an evidentiary hearing. The court must then determine whether Mr. Simpson meets the conditions for relief under *Atkins*.

## VI.

We therefore reverse the judgment and remand this case to the district court for further proceedings.

_____