Don William DAVIS, Appellant

v.

Wendy KELLEY, Director, Arkansas Department of Correction, Appellee

No: 04-2192

United States Court of Appeals, Eighth Circuit.

April 17, 2017

SMITH, Chief Judge, SHEPHERD and KELLY, Circuit Judges

## ORDER

PER CURIAM.

Don Williams Davis was convicted of capital murder in Arkansas and sentenced to death. His conviction and sentence were affirmed on direct appeal, and his petition for postconviction relief in state court was denied. On April 1, 2002, he then filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. While that petition was pending, the Supreme Court of the United States decided *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), holding that executing the intellectually disabled[1] is "cruel and unusual punishment" prohibited by the Eighth Amendment to the United States Constitution. Despite the existence of *Atkins* during the pendency of his petition in the district court, Davis failed to raise an *Atkins* claim before the district court. On January 28, 2004, the district court denied his petition.

On appeal, Davis moved this court to remand to the district court for further proceedings, arguing that there was significant evidence of his intellectual disability to render his death sentence unconstitutional in light of *Atkins. Davis v. Norris*, 423 F.3d 868, 878 (8th Cir. 2005). Viewing

---

1. The *Atkins* decision uses the term "mentally retarded." The Court has more recently used the updated term "intellectually disabled." *Hall v. Florida,* ___ U.S. ___, 134 S.Ct. 1986, 1992, 188 L.Ed.2d 1007 (2014).

Davis's motion to remand as "the functional equivalent of a second or successive petition for habeas corpus because he s[ought] to amend his original petition and obtain an evidentiary hearing on the *Atkins* issue," we explained that Davis must satisfy the requirements of 28 U.S.C. § 2244(b)(2)(A). *Id.* at 878–79. That is, Davis had to "show[ ] that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* at 879 (quoting 28 U.S.C. § 2244(b)(2)(A)). While we acknowledged that *Atkins*'s prohibition on executing the intellectually disabled is retroactive to cases on collateral review, we concluded that Davis failed to satisfy § 2244(b)(2)(A) because "the *Atkins* rule was not previously unavailable to Davis." *Id.* The *Atkins* rule was available because Davis "could have raised this issue while he was litigating his habeas petition in the district court." *Id.* Not only was *Atkins* orally argued prior to Davis filing his petition, but the Supreme Court issued its opinion in *Atkins* "[w]hile Davis was litigating [his] petition and well before his scheduled evidentiary hearing." *Id.* We held that "[a]lthough the issue was available to Davis, he did not attempt to present an *Atkins* claim to the district court and instead waited until after filing this appeal to seek permission to raise it." *Id.* We issued our opinion on September 14, 2005, and the mandate issued on November 21, 2005.

On February 27, 2017, Governor of Arkansas Asa Hutchinson scheduled Davis's execution for April 17, 2017. Then, on April 12, 2017, Davis filed the instant motions to recall the mandate or, alternatively, for leave to file a successive habeas petition and to stay the execution. The motions argue that the available evidence supports the conclusion that Davis is likely intellectually disabled, yet no court has ever considered the merits of his claim. According to Davis, if his *Atkins* claim had been properly raised, he would have been entitled to an evidentiary hearing in federal district court. Davis contends that he is entitled to an evidentiary hearing pursuant to *Atkins*. Davis would use such a hearing to demonstrate that his upcoming execution would violate the Eighth Amendment's bar against executing the intellectually disabled. Davis further argues that because he has presented a prima facie case of intellectual disability, he is entitled to a stay of execution so that the district court can consider the merits of his *Atkins* claim. For the reasons discussed *infra*, we deny Davis's motions to recall the mandate or, alternatively, for leave to file a successive habeas petition and to stay the execution. We grant Davis's motion to file an overlength brief.

## I. *Discussion*

■ "The standard for recalling a mandate in habeas corpus litigation is a strict one." *Thompson v. Nixon*, 272 F.3d 1098, 1099–1100 (8th Cir. 2001). We exercise our "power to recall a mandate ... only in 'extraordinary circumstances.' " *Id.* at 1100 (quoting *Calderon v. Thompson*, 523 U.S. 538, 550, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)). "The Court stated in *Calderon* that '[t]he sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies.' " *Id.* (alteration in original) (quoting *Calderon*, 523 U.S. at 550, 118 S.Ct. 1489).

## A. *Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA)*

■ We also measure a motion to recall a mandate in habeas corpus litigation against statutory limitations. *Id.* at 1100. "A motion to recall a mandate is analyzed as a successive petition under the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Id.* This means

that "for our mandate to be recalled, the standard for successive petitions must be met." *Id.*

Section 2244(b) of 28 U.S.C. provides, in relevant part:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that *was not presented* in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a *new rule of constitutional law*, made *retroactive to cases on collateral review* by the Supreme Court, that was *previously unavailable* . . . .

(Emphases added.)

In summary, "AEDPA imposes three requirements on second or successive habeas petitions." *Ward v. Norris*, 577 F.3d 925, 932 (8th Cir. 2009).

First, any claim that has already been adjudicated in a previous petition must be dismissed. § 2244(b)(1). *Second, any claim that has not already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence.* § 2244(b)(2). Third, before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions. § 2244(b)(3).

*Id.* (emphasis added) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 529–30, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005)).

 Our prior panel unanimously held that Davis's *Atkins* claim was not "previously unavailable" to him when he litigated his habeas petition in district court; thus, Davis's *Atkins* claim was dismissed under § 2244(b)(2). Davis has offered no legal argument as to why the prior panel's holding was incorrect; therefore, it controls.

Nor do we find that the more recent Supreme Court cases cited by Davis have any bearing on his *Atkins* claim because they discuss purely procedural issues unrelated to Davis. *See Goodwin v. Steele*, 814 F.3d 901, 904 (8th Cir. 2014) (per curiam). *Hall* concerned the state's use of a strict IQ test score cutoff of 70 before allowing further evidence of intellectual disability to be considered. 134 S.Ct. at 1990. Davis does not allege that Arkansas applied an IQ test score cutoff to him. The recently decided *Moore v. Texas* concerned the state court's use of out-of-date medical guides, rather than contemporary guides reflecting the medical community's consensus, to determine whether the defendant was intellectually disabled. —— U.S. ——, 137 S.Ct. 1039, 1044, 197 L.Ed.2d 416 (2017). But Davis does not allege that Arkansas uses out-of-date medical guides or otherwise fails to follow contemporary medical standards. Davis, in fact, fails to cite any case supporting his view that the procedural default rules of AEDPA must cede to his *Atkins* claim.

Accordingly, Davis has failed to satisfy the requirements for a successive habeas petition under § 2244(b)(2).

### B. *Miscarriage of Justice*

Davis also argues that a successive petition is necessary to avoid a miscarriage of justice because "issues of whether an individual with a substantial but unadjudicated *Atkins* claim can be executed and whether a potentially meritorious Atkins claim may be forever procedurally defaulted certainly warrant fuller exploration."

 "In a series of cases . . . , [the Supreme Court] ha[s] held that a petitioner otherwise subject to defenses of abusive or

successive use of the writ may have his federal constitutional claim considered on the merits if he makes a proper showing of *actual innocence.*" *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (emphasis added). This rule is called the "fundamental miscarriage of justice exception." *Id.* Here, Davis has not asserted an actual-innocence claim; that is, he is not arguing "that it is more likely than not that no reasonable juror would have convicted him in the light of ... new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Therefore, the miscarriage-of-justice exception is inapplicable.

## C. *Ripeness*

Finally, Davis argues that while he "raised a claim challenging his *sentence* of death under *Atkins* in previous proceedings, *see Davis*, 423 F.3d at 878–79, he now, for the first time, raises a claim that *Atkins* prohibits his actual execution." According to Davis, his "claim that the Eighth Amendment forbids the *execution* of an intellectually disabled person was not ripe until his warrant was issued."

█ We reject this argument. The two cases that Davis relies on—*Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and *Stewart v. Martinez–Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998)—involved the issue of *competency*, not intellectual disability. In *Ford*, the Supreme Court held that "the Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." 477 U.S. at 410, 106 S.Ct. 2595. In *Martinez–Villareal*, the Supreme Court held that § 2244's ban on successive petitions does not apply to a petitioner's *Ford* claim that his scheduled execution would violate the Eighth Amendment because he is incompetent. 523 U.S. at 639, 118 S.Ct. 1618. *Martinez–Villareal* made clear that the issue of "competency

to be executed" is not ripe until execution is imminent. 523 U.S. at 644–45, 118 S.Ct. 1618. Following *Martinez–Villareal*, the Supreme Court held that § 2244(b)'s ban on successive petitions did not apply to a petitioner's *Ford* claim raised for the first time after the state obtained an execution warrant and after a prior habeas application had been denied. *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).

In summary, *Ford* and its progeny focus on the inmate's competency at the time of execution. This makes sense because competency can be lost or regained over time. As stated in *Moore*, and cited in Davis's own motion, a core element of intellectual disability is "the onset of these deficits while still a minor." 137 S.Ct. at 1045.

In contrast to *Ford*, *Martinez–Villareal*, and *Panetti*, *Atkins* concerned intellectual disability, not competency. In creating " 'a substantive restriction on the State's power to take the life' of a mentally retarded offender," *Atkins* focused exclusively on the prisoner's culpability or reliability *at the time that the crime was committed.* *Atkins*, 536 U.S. at 321, 122 S.Ct. 2242 (quoting *Ford*, 477 U.S. at 405, 106 S.Ct. 2595). The Court explained:

Because of their disabilities in areas of reasoning, judgment, and control of their impulses, however, *they do not act* with the level of moral culpability that characterizes the most serious adult criminal conduct. Moreover, their impairments can jeopardize the reliability and fairness of capital proceedings against mentally retarded defendants.

*Id.* at 306–07, 122 S.Ct. 2242 (emphasis added). Davis, in essence, asks this court to stretch the *Atkins* decision beyond its actual holding. We decline to do so.

Whether Davis is now, in 2017, intellectually disabled has no bearing on whether he had the requisite moral culpability for

the murder he committed in 1990. *See In re Bowling*, 422 F.3d 434, 436 (6th Cir. 2005) ("Thus, the key substantive question before this court is whether Bowling was mentally retarded *at the time he committed the murders* of James and Tina Early." (emphasis added)). Additionally, Davis has failed to provide a single attachment, document, or factual allegation about his current mental abilities. Even Dr. Martell's letter is limited to the issue of mental ability "that either was not presented or was incompletely presented during the penalty phase of Mr. Davis's capital trial."

We decline to treat Davis's *Atkins* claim as though it were a *Ford* claim. Our conclusion is supported by *Panetti*, in which the Supreme Court took great care to expressly limit the reach of *Panetti* to the unique circumstances of a *Ford* claim. *See Panetti*, 551 U.S. at 945, 127 S.Ct. 2842 ("We conclude ... that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe."). *Panetti* thus has no force or applicability to Davis's claim. *Id.* at 947, 127 S.Ct. 2842 ("In the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar."). Just as *Panetti* speaks only to *Ford* claims, so too does *Martinez–Villareal*, which dealt with exhaustion of state remedies. 523 U.S. at 639, 118 S.Ct. 1618.

"*Ford* claims are unique among ineligibility arguments in that they are habeas relief issues based only on a prisoner's status at the time of a potential execution." Lee Kovarsky, *Death Ineligibility and Habeas Corpus*, 95 Cornell L. Rev. 329, 356 (2010) (citing *Martinez–Villareal*, 523 U.S. at 644–45, 118 S.Ct. 1618). True, a panel of this circuit has discussed the pos-

sibility of an individual proving intellectual disability "*either* (a) at the time of committing the crime *or* (b) at the presumptive time of execution." *See Sasser v. Hobbs*, 735 F.3d 833, 846 (8th Cir. 2013). But this statement is dicta. The issue in *Sasser* was whether a district court had properly conducted an evidentiary hearing on the prisoner's intellectual disability. No execution was imminent, so there was no reason to discuss claims that could be brought at the presumptive time of execution. And since *Sasser* did not involve any ripeness claim, it is not controlling on the question before us now.

We acknowledge that in *Nooner v. Niles*, our court expressly assumed, without deciding, that *Atkins* claims could be treated the same as *Ford* claims. 499 F.3d 831, 833 n.2 (8th Cir. 2007). The court made this assumption "[b]ecause the parties ... assumed" the claims are treated the same. *Id.* But no such assumption is made in the present case. The parties in this case vigorously disagree on this issue. Therefore, *Nooner* is without precedential value on the issue.

An Eighth Circuit case that did in fact deal with a similar issue is *Goodwin*. 814 F.3d 901. The *Goodwin* court rejected an argument that a prisoner's intellectual disability claim was not ripe until the Supreme Court had issued its opinion in *Hall*. *Id.* at 903 n.1. Goodwin relied on *Panetti* and *Martinez–Villareal* for his argument. *Id.* We found those two cases inapplicable because they involved competency claims that could not become ripe until the State set an execution date. *Id.* "Goodwin's Eighth Amendment claim, by contrast, ripened long ago." *Id.* Admittedly, the *Goodwin* decision does not deal with the precise issue before us. But it nonetheless analyzes the ripeness of an *Atkins* claim, and we therefore find its holding persuasive.

In conclusion, whether Davis is now, in 2017, intellectually disabled has no bearing on whether he had the requisite moral culpability for the murder that he committed in 1990. *See Bowling*, 422 F.3d at 436. The issue of intellectual disability, therefore, does not suddenly become ripe when the execution date is imminent.

## II. *Conclusion*

Accordingly, we deny Davis's motion to recall the mandate or, alternatively, for leave to file a successive habeas petition and to stay the execution. We grant Davis's motion to file an overlength brief.

KELLY, Circuit Judge, dissenting.

Don Davis was convicted of capital murder in 1992, and sentenced to death. On April 1, 2002, after exhausting his state-court remedies, he filed a petition for writ of habeas corpus in the United States District Court for the Western District of Arkansas. On June 20, 2002, while his petition was pending, the Supreme Court decided Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held that executing the intellectually disabled[2] is "cruel and unusual punishment" and therefore violates the Eighth Amendment. Davis did not raise any claims based on Atkins before the district court. On January 28, 2004, the district court denied his petition.

Davis appealed the denial of the petition to this court. While his appeal was pending, he moved for a remand to the district court to hold an evidentiary hearing to determine whether he was intellectually disabled and therefore ineligible to be executed under Atkins. The panel, noting the unusual procedural posture, considered the motion to be the "functional equivalent of a second or successive petition for habeas

corpus." Under 28 U.S.C. § 2244(b), a petitioner may not bring a successive habeas application on a claim that relies on new law when it was not presented in a prior application, unless the new law was "previously unavailable." The panel explained that because Atkins was issued while Davis' habeas petition was pending in district court, he had an opportunity to raise it at that point, and failed to do so. Accordingly, in its 2005 opinion the panel concluded that § 2244(b)'s ban on successive petitions applied, and denied both the motion to remand and the petition for writ of habeas corpus.

On February 27, 2017, the Arkansas governor scheduled Davis' execution for April 17, 2017. On April 12, 2017, Davis filed the instant motions to recall the mandate or, alternatively, for leave to file a successive habeas petition and to stay the execution. The motions argue that Davis is entitled to an evidentiary hearing pursuant to Atkins to demonstrate that his upcoming execution would violate the Eighth Amendment's bar against executing the intellectually disabled. Davis further argues that because he has presented a prima facie case of intellectual disability, he is entitled to a stay of execution so the district court can consider the merits of his Atkins claim.

## I. Successive Petition

In my view, Davis' prior Atkins claim does not procedurally bar him from pursuing his present Atkins claim challenging his imminent execution. The Eighth Amendment categorically prohibits executing inmates who fall within one of three discrete classes: juveniles, the incompetent, and the intellectually disabled. Roper v. Simmons, 543 U.S. 551, 568, 125 S.Ct.

---

**2.** The Atkins decision uses the term "mentally retarded." The updated term "intellectually disabled" has the same meaning.

1183, 161 L.Ed.2d 1 (2005). The Supreme Court has held that § 2244's ban on successive petitions does not apply to a petitioner's claim under Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), that his scheduled execution would violate the Eighth Amendment because he is incompetent. Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). The Court explained that the petitioner's prior habeas petition could not bar such a claim because it could not be adjudicated until the state obtained an execution warrant; it was only at that time that the execution became "imminent" and the petitioner's "competency to be executed" could be determined. Id. at 644–45, 118 S.Ct. 1618. Panetti v. Quarterman—which the Supreme Court decided after the original panel denied Davis' motion to remand—expanded the application of Martinez-Villareal, holding that § 2244's ban on successive petitions did not apply where the petitioner raised a Ford claim for the first time after the state obtained an execution warrant, and after a prior habeas application had been denied. 551 U.S. 930, 945, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).

Like the Eighth Amendment prohibition on executing the incompetent, the Eighth Amendment prohibition on executing the intellectually disabled is "a substantive restriction on the State's power to take the life" of an inmate. Atkins, 536 U.S. at 321, 122 S.Ct. 2242 (quoting Ford, 477 U.S. at 405, 106 S.Ct. 2595). Atkins highlighted retribution and deterrence as significant factors, recognizing that the lesser culpability of an intellectually disabled offender warrants exempting those offenders from the ultimate criminal penalty of death. Id. at 319–20, 122 S.Ct. 2242. But the Court has also said that "[n]o legitimate penological purpose is served by executing a person with intellectual disability ... [and t]o do so contravenes the Eighth Amendment, for to impose the harshest of punishments on an intellectually disabled person violates his or her inherent dignity as a human being." Hall v. Florida, — U.S. —, 134 S.Ct. 1986, 1992, 188 L.Ed.2d 1007 (2014); accord Brumfield v. Cain, — U.S. —, 135 S.Ct. 2269, 2283, 192 L.Ed.2d 356 (2015) ("[I]t would violate the Eighth Amendment to permit the State to impose the 'law's most severe sentence,' Hall, 572 U.S. at —, 134 S.Ct. at 1993, and take his life as well." (emphasis added)).

Thus, although Martinez-Villareal and Panetti were decided in the context of Ford claims, their reasoning applies to Atkins claims as well: Under either type of claim, the question of whether the inmate is constitutionally eligible for execution is ripe for resolution only when the execution is imminent. See Sasser v. Hobbs (Sasser II), 735 F.3d 833, 846 (8th Cir. 2013) (explaining that the "timing of proof" matters in an Atkins claim because an individual's intellectual disability can improve over time, and because an individual "may have better evidence of his condition at one point in life than another"); see also Singleton v. Norris, 319 F.3d 1018, 1023 (8th Cir. 2003) ("[A] habeas petition raising a claim that had not arisen at the time of a previous petition is not barred by § 2244(b)...."). Indeed, we have previously recognized the application of Martinez-Villareal and Panetti to Atkins claims: In Nooner v. Niles (Nooner II), we assumed that Martinez-Villareal and Panetti applied to both Ford and Atkins claims. 499 F.3d 831, 833 n.2 (8th Cir. 2007). Mental illness and intellectual disability are different in significant ways, including how stable a diagnosis is over time. But these differences are insufficient to warrant different treatment in this context, because the Eighth Amendment prohibits executing both the incompetent and the intellectually disabled. Significantly, no court has ever decided whether Davis is in fact intellectu-

ally disabled at any time during his criminal proceedings.

In my view, the bar on successive petitions does not apply to Atkins claims filed after the state has obtained an execution warrant, and thus it does not apply to Davis' present Atkins claim, and "there was accordingly no need for him to apply for authorization to file a second or successive petition." Martinez-Villareal, 523 U.S. at 642, 118 S.Ct. 1618. It is therefore immaterial that Davis previously tried to raise an Atkins claim before us in 2005. Such a claim could not have challenged the constitutionality of Davis' now-imminent execution; it was filed almost twelve years before the Arkansas governor scheduled Davis' execution for April 17, 2017. See Panetti, 551 U.S. at 946, 127 S.Ct. 2842; Martinez-Villareal, 523 U.S. at 644–45, 118 S.Ct. 1618 (acknowledging that the district court was unable to resolve the prisoner's Ford claim at the time of his initial habeas filing); Nooner II, 499 F.3d at 834 ("[T]he setting of an execution date caused the . . . claims to become ripe.").[3] Because Davis' execution is imminent, statutory restrictions on the filing of successive habeas petitions should not prevent the court from determining whether he belongs to one of the three discrete classes of inmate that the Supreme Court has held the United States Constitution prohibits executing. See Roper, 543 U.S. at 568, 125 S.Ct. 1183.

Goodwin v. Steele, 814 F.3d 901 (8th Cir. 2014) (per curiam) is not to the contrary. There, the petitioner argued that even though he had previously raised an Atkins claim, his petition should not be barred because it was not based on Atkins, but on new law that was not previously available: the Supreme Court's decision in Hall v. Florida, —— U.S. ——, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014), which held unconstitutional Florida's per se rule that a defendant with an IQ over 70 was not intellectually disabled and could therefore be executed. Goodwin, 814 F.3d at 903. The petitioner additionally argued that his claim was not a successive petition under Martinez-Villareal and Panetti because it was not "ripe" until Hall was decided. Id. at 903 n.1. "Stat[ing] our conclusions briefly because of the exigency of time," we rejected both arguments and denied the petitioner's motion for authorization to file a second or successive habeas application and motion for stay of execution. Id. at 903–04. Goodwin did not cite Nooner II, nor did it address the question here, namely, whether the petitioner's claim of intellectual disability at the time of execution could not have been decided before the state set his execution date. See United States v. Knowles, 817 F.3d 1095, 1097 (8th Cir. 2016) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925))).

## II. Stay of Execution

Because I believe Davis may file a successive petition based on Atkins as it applies to Davis' execution, I next address Davis' motion to stay his execution pend-

---

3. This conclusion is not inconsistent with the previous panel's denial of Davis' 2005 motion to remand. To the extent that motion presented an adjudicable claim of intellectual disability, it could not have been premised on the theory that Davis would be intellectually disabled at the time of his execution; rather, it could only have been premised on the theory that Davis was intellectually disabled at the

time he committed the offense. See Sasser II, 735 F.3d at 846 (explaining that the Eighth Amendment overlaps with an Arkansas statute, Ark. Code Ann. § 5-4-618, to "preclud[e] the execution of an individual who can prove mental retardation either (a) at the time of committing the crime or (b) at the presumptive time of execution").

ing the resolution of his new motion. In concluding that Davis is entitled to a stay of his execution, I consider the "likelihood of success on the merits" of Davis' motion for an Atkins hearing, "the relative harms to the parties," and "the extent to which [Davis] has delayed unnecessarily in bringing the claim." Nooner v. Norris, 491 F.3d 804, 808 (8th Cir. 2007) (Nooner I) (quoting Nelson v. Campbell, 541 U.S. 637, 649–50, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004)). All three factors weigh in favor of staying Davis' execution.

**1. Likelihood of Success on the Merits**

A federal court "must hold an evidentiary hearing" on a defendant's Atkins claim if the defendant "did not receive a full and fair evidentiary hearing in state court" and there is a factual dispute about the defendant's intellectual capacity. Simpson v. Norris, 490 F.3d 1029, 1035 (2007). An allegation that a defendant is intellectually disabled as that term is defined in Atkins is sufficient to trigger the court's responsibility to conduct an Atkins hearing. Sasser v. Norris, 553 F.3d 1121, 1125 (8th Cir. 2009) (Sasser I), abrogated on other grounds by Wood v. Milyard, 566 U.S. 463, 132 S.Ct. 1826, 1834, 182 L.Ed.2d 733 (2012) (quoting Simpson, 490 F.3d at 1035).

Atkins left to the states the tasks of defining intellectual disability and establishing procedures to implement Atkins' prohibition on the execution of mentally disabled offenders. Atkins, 536 U.S. at 318, 122 S.Ct. 2242. States are free to provide additional protection to intellectually disabled offenders, provided that protection encompasses at least those individuals Atkins noted are generally understood as intellectually disabled. In Arkansas, intellectual disability means "(A) Significantly subaverage general functioning accompanied by a significant deficit or impairment in adaptive functioning manifest in the developmental period, but no later than age eighteen (18) years of age; and (B) a deficit in adaptive behavior." Ark. Code Ann. § 5-4-618(a)(1). "[T]he Arkansas Supreme Court has consistently construed its state's statutory right to be concurrent with the federal constitutional right established in Atkins." Sasser II, 735 F.3d at 842 (citing Anderson v. State, 357 Ark. 180, 163 S.W.3d 333, 354–55 (2004)).

Davis' motion for an Atkins hearing is likely to succeed on the merits because Davis alleges that he is intellectually disabled as that term is defined in Atkins and in Arkansas. Davis presents evidence of subaverage general functioning and a deficit in adaptive behavior. Though IQ scores are relevant to determining whether an offender has presented evidence of subaverage general functioning, there is no strict cut-off with respect to an offender's IQ score. See Hall, 134 S.Ct. at 2001 (invalidating Florida law establishing a strict cut off at an IQ of 70); Sasser II, 735 F.3d at 843. Instead, "it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior because there is a measurement error of approximately 5 points in assessing IQ, depending on the testing instrument." Id. (citation omitted) (alterations omitted). Davis offers evidence that he scored between 70 and 75 (taking into account the margin of error) on two IQ tests: one performed when he was 9 years old and one performed when he was 12 years old, and achieved a higher score on a third.[4] Furthermore, Davis presents a

---

4. Though I am mindful that there exists an important distinction between the inquiry with respect to whether Davis was intellectually disabled at the time of the crime and whether Davis will be intellectually disabled when he is executed, some evidence—including that establishing an onset of symptoms prior to age 18—is relevant to both inquiries. See Sasser II, 735 F.3d at 849.

report authored by Dr. Daniel Martell, a forensic psychologist, explaining that Davis' records indicate that he was exposed to alcohol while in the womb, was born with the umbilical cord wrapped around his neck, and has exhibited behavior consistent with left hemisphere brain damage, including abnormal speech, verbal learning disability, and ADHD, throughout his childhood and adult life. These allegations support the need for an evidentiary hearing to assess whether Davis exhibits subaverage general intellectual functioning.

With respect to demonstrating a deficit in adaptive behavior, Davis presents evidence that he was unable to complete school and struggled with social relationships as a child and as an adult. Davis was unable to live independently due in part to his inability to work at anything but a menial labor job for more than a few weeks at a time. Dr. Martell noted that Davis experienced profound life events that may have contributed to psychological and behavioral abnormalities, including abandonment and sexual abuse. Dr. Martell explained that Davis' maladaptive behaviors are consistent with intellectual disability, though Dr. Martell noted that a more comprehensive evaluation is needed to determine whether Davis is currently intellectually impaired.

The pleading standard a defendant must meet to demonstrate he is entitled to an Atkins hearing is a low one. See Brumfield v. Cain, — U.S. ——, 135 S. Ct. 2269, 192 L.Ed.2d 356 (2015) (finding Lousiana standard that a defendant must raise a "reasonable doubt" as to their intellectual disability before being entitled to an Atkins hearing consistent with Atkins); Simpson, 490 F.3d at 1035. "There is no question the allegations in [Davis'] petition are as adequate as Simpson's pleading threshold where the petitioner 'alleged that he is mentally retarded as Atkins defines that condition' in order to obtain an evidentiary hearing on his mental retardation claim." Sasser I, 553 F.3d at 1126 (quoting Simpson, 490 F.3d at 1035); see also Jackson v. Norris, 615 F.3d 959, 963–64 (8th Cir. 2010) (finding that the defendant's petition "satisfied the pleading standard of Simpson and Sasser I, by expressly incorporating" evidence of trouble in school, an IQ score of 70, difficulty with visual motor and expressive and receptive language skills, and diagnoses of ADHD and antisocial personality disorder). Therefore, this factor weighs in favor of granting Davis' motion to stay his impending execution.

### 2. Relative Harm to the Parties

The balance of harms here unquestionably weighs in Davis' favor. While the state has a significant interest in the finality of judgments, see Nelson v. Campbell, 541 U.S. 637, 650, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004), in this case, the state's interest in promptly executing Davis is also rooted in the imminent expiration of its supply of midazolam and its concern that it may be unable to obtain more. The state's interest in the finality of judgments and the use of its midazolam supply prior to its expiration are outweighed by Davis' interest in ensuring that his execution is not carried out in violation of the constitutional prohibition against executing a person who is intellectually disabled.

### 3. Delay

Davis filed his motions to recall the mandate or, alternatively, for leave to file a successive habeas petition and to stay the execution on April 12, 2017, after the Arkansas governor scheduled his execution for April 17, 2017. As explained above, Davis' intellectual capacity at the time of his execution could not be adjudicated until his execution was imminent. See Nooner

II, 499 F.3d at 834 (citing Martinez-Villareal, 523 U.S. at 644–45, 118 S.Ct. 1618). While the Supreme Court has noted "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay," Nelson, 541 U.S. at 650, 124 S.Ct. 2117, this is not such a case. Instead, Davis brought the instant challenge to his execution soon after the governor of Arkansas signed the order setting Davis' execution date. Nooner I, 491 F.3d at 809. Because Davis focuses on whether he is intellectually disabled such that he may not be executed—not just that he may not be sentenced to death—he has not unreasonably delayed in filing this motion for stay. See id. at 810 (discussing Panetti and noting that "a condition of the mind which may not manifest itself until so late a time that a stay becomes necessary in order to evaluate properly the asserted mental deficiency" presents an argument distinct from a challenge to execution protocol).

### III. Conclusion

I would grant Davis' motion for leave to file a successive habeas corpus application and his motion to stay his execution pending resolution of his Atkins claim. For these reasons, I respectfully dissent.