Filed 7/11/22 P. v. Magee CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077903 |
| v. | (Super. Ct. No. FSB1203948) |
| DUANE MORRIS MAGEE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Harold T. Wilson, Jr., Judge. Dismissed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# I.

# INTRODUCTION

Defendant and appellant Duane Morris Magee appeals from a postjudgment order denying his Penal Code[1] section 1170.95 petition to vacate his second degree murder conviction for killing his wife Velda and obtain resentencing under the procedures established by Senate Bill Nos. 775 and 1437. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has not done so. As defendant has failed to file a supplemental brief raising any issues for our review, we shall dismiss the appeal.

# II.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant and Velda met while in treatment for alcohol and substance abuse. In early 2012, Velda's adult daughter, G.N., moved in with them in their house on Greystone Road in San Bernardino. (*Magee I*, *supra*, E070429, at p. 2.)

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The factual background is taken verbatim from this court's nonpublished opinion in defendant's prior direct appeal, case No. E070429. (*People v. Magee* (Feb. 05, 2020, E070429) [nonpub. opn.] (*Magee I*).)

In the summer of 2012, defendant began having frequent seizures. Defendant resumed drinking alcohol again around the same time. Velda told him he was drinking too much and threw away or poured out his alcohol. Velda told a neighbor that she wanted a restraining order against defendant and that her marriage with defendant was failing. She also informed her neighbor that she wanted a divorce because of defendant's drinking and that she had changed the locks because she was afraid of defendant. (*Magee I*, *supra*, E070429, at p. 3.)

G.N. believed that Velda was doing "something" to cause defendant's seizures. G.N. told defendant she thought his seizures were caused by Velda poisoning him. G.N. also thought that Velda did not care about defendant's seizures or his health. G.N. believed Velda sought to recover on an insurance policy on defendant that she had recently increased. G.N. told defendant Velda "wanted him dead," and that he should move out of the Greystone residence because G.N. feared for his life. She also told defendant she suspected that Velda was having an affair. Shortly afterward, in early August 2012, defendant moved in with his sister, A.M. (*Magee I*, *supra*, E070429, at p. 3.)

On the morning of September 1, 2012, defendant called G.N. and told her he was at the Greystone residence.[3] A.M. could not get a hold of defendant, so she called their sister, R.M., who lived closer to the house, to check on him. When R.M. arrived,

---

[3] Defendant had access to the house because G.N. had made him a key after Velda changed the locks.

defendant was drunk and emotional. R.M. stayed with him until the evening. (*Magee I*, *supra*, E070429, at p. 3.)

The next morning, G.N. spoke with defendant. He was angry, and told G.N. he wanted to hurt and kill Velda. He said multiple times during their conversation that he was going to kill Velda. Defendant also said he had talked to friends who worked in the judicial system and law enforcement about what would happen to him if he killed Velda. (*Magee I*, *supra*, E070429, at p. 4.)

Around 4:30 p.m., the police were dispatched to the Greystone residence in response to a reported stabbing. Defendant had called 911 and said: "I just killed my wife." "I'm hoping she's dead." "I killed her with a knife." "I just killed her." "She was cheatin' on me and I killed her." "She's laying here on the floor bleedin' to death." "I stabbed her all over." (*Magee I*, *supra*, E070429, at p. 4.)

The responding officers took defendant to the hospital for treatment for the injuries he sustained while stabbing Velda. On the way there, defendant said to the officers, "Crime of passion . . . . Crime of [p]assion." "[L]istening to her kids, cheating on me." "I'm guilty all the way. She claimed my heart." "I did not want to do nothing like that." "Crime of passion. She's dead. Aww, dead."[4] While at the hospital, defendant told medical personnel that he had been injured when stabbing his wife. (*Magee I*, *supra*, E070429, at p. 4.)

---

[4] Defendant's statements while in the patrol car were recorded and the audio was played for the jury.

A jury convicted defendant of second degree murder (§ 187, subd. (a)) for killing his wife. The jury also found true an allegation that defendant used a dangerous weapon, a knife, in the commission of the murder. (§ 12022, subd. (b)(1).) Defendant was sentenced to 15 years to life plus one year. (*Magee I*, *supra*, E070429, at p. 2.)

Defendant subsequently appealed, claiming the trial court prejudicially erred by (1) denying his motion for a new trial based on newly discovered evidence, (2) admitting hearsay testimony from the People's pathologist concerning Velda's autopsy, and (3) excluding evidence related to his state of mind at the time of Velda's murder. Defendant also asserted the abstract of judgment must be modified to award him presentence conduct credits. (*Magee I*, *supra*, E070429, at pp. 2-14.) On February 20, 2020, we rejected defendant's contentions and affirmed the judgment in a nonpublished opinion. (*Ibid.*)

On February 18, 2021, defendant in propria persona filed a petition for resentencing pursuant to section 1170.95. He declared that he was prosecuted under the felony-murder theory or the natural and probable consequences doctrine; he was convicted of second degree murder under one of those theories; and he could not now be so convicted due to the changes to sections 188 and 189, effective January 1, 2019.

On April 23, 2021, the People filed an informal response, arguing defendant was ineligible for relief as a matter of law pursuant to section 1170.95 because he was the actual killer.

After counsel was appointed for defendant, the trial court held a hearing on October 8, 2021. At that time, defendant's appointed counsel requested a prima facie finding and order to show cause. The court denied the request for an order to show cause, and denied the petition. The court found that defendant had not made a prima facie showing for relief, explaining: "The Court has gone over the court file, the minutes, and the jury verdict forms. [Defendant] was convicted of second degree murder and there was a special allegation with respect to the use of a knife pursuant to [section] 12022(b)(1). The jury found that, in fact, a knife was used in the commission of the murder, so [defendant] was personally involved. The Court is going to deny the prima facie showing. Motion denied." Defendant timely appealed.

III.

DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the procedural background and potential arguable issues, and requesting this court to conduct an independent review of the record. Counsel has raised the issue of whether the trial court erred by engaging in improper factfinding. While acknowledging a split in authority, counsel also in length argues why we should conduct an independent review of the entire record. Counsel believes that because this appeal is defendant's first opportunity to challenge his murder conviction under a new law, it is akin to a first direct appeal of right.

6

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

As noted by defendant's appointed appellate counsel, our high court is currently considering whether an appellate court must conduct an independent review of the record when counsel files a *Wende* brief after the trial court denies a petition for resentencing under section 1170.95. (*People v. Delgadillo*, rev. granted Feb. 17, 2021, S266305; see Cal. Rules of Court, rule 8.512(d)(2).) Recent Court of Appeal cases have consistently held that we are not required to conduct such a review and may dismiss an appeal as abandoned if the defendant does not file a supplemental brief. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1031-1032, 1039-1040, review granted Oct. 14, 2020, S264278; *People v. Figueras* (2021) 61 Cal.App.5th 108, review granted May 12, 2021, S267870; *People v. Scott* (2020) 58 Cal.App.5th 1127, 1131, review granted Mar. 17, 2021, S266853.) Some cases have explained that we have discretion to review the record independently for arguable issues, either where an initial review does not show the defendant is obviously ineligible for relief (such as when the defendant was convicted on a theory he was the actual killer) or as a routine matter. (See *People v. Gallo* (2020) 57 Cal.App.5th 594, 598-599; *People v. Flores* (2020) 54 Cal.App.5th 266, 269-274.)

In this case, we conclude defendant is not entitled to *Wende* review of an order denying his petition for resentencing under section 1170.95. Review pursuant to *Wende*, or its federal constitutional counterpart *Anders*, is required only in the first appeal of right from a criminal conviction. (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 555;

7

*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 536-537; *People v. Serrano* (2012) 211 Cal.App.4th 496, 500-501 (*Serrano*).)

The right to *Anders*/*Wende* review applies only at appellate proceedings where defendant has a previously established constitutional right to counsel. (*Serrano*, *supra*, 211 Cal.App.4th at p. 500; *Conservatorship of Ben C.*, *supra*, 40 Cal.4th at pp. 536-537.) The constitutional right to counsel extends to the first appeal of right, and no further. (*Serrano*, *supra*, at pp. 500-501.) While a criminal defendant has a right to appointed counsel in an appeal from an order after judgment affecting his or her substantial rights (Pen. Code, §§ 1237, 1240, subd. (a); Gov. Code, § 15421, subd. (c)), that right is statutory, not constitutional. Thus, defendant is not entitled to *Wende* review in such an appeal. (See *Serrano*, *supra*, at p. 501.) The appeal before us, "although originating in a criminal context, is not a first appeal of right from a criminal prosecution, because it is not an appeal from the judgment of conviction." (*Ibid*.) Because defendant has not personally filed a supplemental brief, we will dismiss his appeal as abandoned.

We note, however, that the result would be the same even if we were to exercise our discretion to conduct an independent review. There is no dispute that defendant was the actual killer. Indeed, defendant admitted to stabbing his wife. As we noted in our prior nonpublished opinion from defendant's direct appeal, "There was no dispute about how Velda died—because defendant did not dispute that he killed her by stabbing her repeatedly. The only issue was whether defendant was justified in doing so." (*Magee I*,

8

*supra*, E070429, at pp. 6-7.) The trial court correctly denied defendant's section 1170.95 petition.

## IV.

## DISPOSITION

The appeal is dismissed as abandoned.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON\
Acting P. J.

We concur:

SLOUGH\
J.

RAPHAEL\
J.