2022 IL App (2d) 210450-U
No. 2-21-0450
Order filed August 17, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Ogle County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03-CF-110 |
| MICKEAL J. PINION, | ) ) ) | Honorable Robert T. Hanson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We grant the appellate defender's motion to withdraw because there is no arguably meritorious basis for an appeal.

¶ 2    Defendant, Mickeal J. Pinion, appeals from the second-stage dismissal of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).  The appellate defender moves to withdraw as counsel, asserting that the appeal presents no issue of potential merit.  We agree.  Thus, we permit counsel to withdraw and affirm the dismissal.

¶ 3                                    I. BACKGROUND

¶ 4    On August 18, 2003, a grand jury indicted defendant on two counts of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2002)) and one count of concealment of a homicidal death (720 ILCS 5/9-3.1 (West 2002)).  The indictment alleged that, on July 29, 2004, defendant, or a person for whose conduct he was legally responsible, killed Joseph Mirro by drowning him, shooting him in the head with a firearm, and beating him about the head with a baseball bat, causing a depressed skull fracture.  Defendant and a codefendant then buried Mirro's body.

¶ 5    Defendant, represented by appointed counsel John C. Redington, moved to suppress defendant's inculpatory statements during custodial interrogation and the physical evidence that defendant claimed was obtained through those statements.  The trial court suppressed some of defendant's inculpatory statements but declined to suppress any physical evidence.

¶ 6    Later, the parties reached an agreement by which defendant would waive his right to a jury trial and proceed with a stipulated bench trial on the knowing-murder count and the concealment count.  Defendant would preserve the suppression issue for appeal.  In exchange, the State agreed to dismiss the intentional-murder count and not to seek an enhanced sentence based either on the use of a firearm in the killing or on the brutal and heinous nature of the offense.  Before accepting the agreement, the court confirmed with defendant that he was in good mental and physical health and had not taken any medication that day.  The court admonished defendant about his right to a jury trial, and defendant confirmed that he wished to waive that right and had signed a written waiver form.  Defendant acknowledged that he understood the mechanics of a stipulated bench trial.  Defendant also said he understood the minimum and maximum penalties for the offenses and that there was no agreement on sentencing.

¶ 7    The stipulated evidence showed that Mirro died from the combined effects of drowning, a .22 caliber rifle shot to his head, and blunt force trauma to his head; drowning was the primary

cause of death. Defendant admitted to law enforcement officers his involvement in Mirro's death. The court found defendant guilty of first-degree murder and concealment of a homicidal death.

¶ 8 On November 22, 2004, the State informed the court that it intended to call at sentencing a witness who also was represented by Redington. On November 29, 2004, defendant filed a posttrial motion asserting that the court had erred in partly denying his suppression motion. That same day, Redington moved for leave to withdraw as counsel. He claimed that defendant's presentencing investigation report (PSI) referenced alleged statements defendant made to another inmate, Timothy Parker, whom Redington also represented. Because the State intended to call Parker as a witness in aggravation, Redington claimed that he was "unable to aggressively and zealously defend [defendant] *** without violating his duty of confidentiality to Mr. Parker." The court allowed Redington to withdraw and appointed Eric Morrow to replace him. Morrow adopted the posttrial motion prepared by Redington. The court denied the motion.

¶ 9 At defendant's sentencing hearing, Parker testified that he was in jail with pending Class X and Class 1 drug charges. He had an agreement with the State under which, in exchange for his testimony and his plea to a Class 1 offense, the State would dismiss the Class X charges and he would be sentenced to four years' imprisonment. Parker testified that he was defendant's cellmate from August through October 2004, and the two had spoken about defendant's murder charges many times. Defendant told Parker that he thought he was being charged with killing a "cop." Mirro wanted defendant to sell him marijuana, and defendant asked him if he was a "cop." Defendant, unsatisfied with Mirro's answers, hit Mirro in the head with a baseball bat several times. Because Mirro started making gurgling noises, defendant shot him. Defendant and Klein then put Mirro in a boat and went out on the Rock River. Mirro started convulsing; defendant laughed about this when he described it to Parker. Defendant said that he regretted only that he

had not killed Klein and had not buried Mirro's body deeper. Parker also said that defendant had talked about an escape plan that included killing two corrections officers. Parker spoke to a sergeant at the jail after deciding that defendant was serious about his escape plan. When he first reported the escape plan, he did not mention defendant's statements about the murder. The corrections sergeant testified, confirming that Parker had reported defendant's escape plan. At that time, Parker had not sought any agreement from the State.

¶ 10 On April 12, 2005, the trial court sentenced defendant to consecutive terms of 50 years' imprisonment for murder and 10 years' imprisonment for concealment of a homicidal death. On May 12, 2005, defendant, still represented by Morrow, moved for release of discovery to defendant personally for his use in preparing his appeal or postconviction pleading. Defendant also moved to reconsider his sentence. On June 21, 2005, the court granted the motion to reconsider in part, making the two sentences concurrent and reducing the 10-year sentence to 5 years. The court denied the motion to release discovery to defendant.

¶ 11 Defendant appealed his conviction, contending that the trial court erred in denying his motion to suppress the physical evidence obtained by use of his inculpatory statements. We affirmed in an order dated May 14, 2007. *People v. Pinion*, No. 2-05-0719 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12 On January 7, 2008, defendant filed a *pro se* motion seeking discovery for his use in preparing a postconviction petition. The trial court appointed Morrow to represent defendant. On February 28, 2008, the trial court granted defendant's motion, directing Morrow to send the discovery to defendant. The court stated that Morrow would be discharged as defendant's attorney after sending the discovery to defendant.

¶ 13    On July 24, 2008, defendant sent the trial court a letter requesting free transcripts of the hearings on January 28, February 14, and February 28, 2008, pertaining to his motion for discovery.  That same day, the trial court denied the request.

¶ 14    On November 13, 2008, Morrow filed a request for attorney fees; his statement included an October 7, 2008, line for reproducing and mailing discovery to defendant.

¶ 15    On October 22, 2009, defendant sent another letter requesting free transcripts of the January 28, February 14, and February 28, 2008, hearings.  He noted that he was not present for those hearings.  He also requested a free copy of his PSI.  That same day, the trial court granted the request for the PSI but denied the request for the transcripts.

¶ 16    On August 20, 2019, defendant filed the postconviction petition at issue here.  He asserted three claims. First, he did not knowingly and voluntarily waive his right to a jury trial and accept a stipulated bench trial.  Second, Redington knew that his representation of Parker created a conflict of interest for Redington at trial.  Specifically, "Parker *** had information which could have assisted the defense at trial," but "Redington could not divulge that information or zealously represent [defendant]."  Third, "[t]he State failed to provide confidential records that were material and pertinent to the defense at trial, and [c]ounsel on direct appeal was ineffective as he failed to brief this issue to the [a]ppellate [c]ourt."  Defendant also asserted that the trial court had erred in denying his May 2005 motion for discovery and that his appellate counsel was ineffective for failing to raise this issue.

¶ 17    Defendant attached only a verification affidavit to his petition.  The court advanced the petition to the second stage of review and appointed counsel.

¶ 18    On March 10, 2020, defendant filed an affidavit prepared by counsel.  Defendant averred as follows.  Morrow allowed defendant to review discovery but took the material back in February

2005 at the trial court's direction. The trial court denied Morrow's request to allow defendant to take some of the discovery to prison. After this court affirmed defendant's conviction in July 2007, defendant asked Morrow to renew the request for the discovery so that he could file a petition within six months. Morrow did not file a motion until January 7, 2008. The court held hearings on that motion on January 28, February 14, and February 28, 2008, but defendant was not brought back for the hearings and was not informed of the court's ruling. In July 2008, he sought transcripts of those hearings, but the court denied his request. He waited 15 months, until October 2009, to make further requests to the court. At that time, the court "release[ed] additional copies of [the PSI] rather than the discovery materials." (Instead of "discovery," defendant might have meant "transcripts," since those are what he sought in his October 2009 letter.) "Over the next ten years *** , [defendant] was consistently advised by non-lawyer inmates assigned to the law libraries that the lack of further facts or information regarding Redington's conflict would preclude [him] from obtaining effective post-conviction relief, certainly beyond the 2008 filing deadline." Only after he filed his postconviction petition did he learn that the court had ordered Morrow on February 28, 2008, to send him discovery. Morrow never did so.

¶ 19    On March 16, 2020, postconviction counsel filed a certificate per Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Counsel stated that he (1) consulted with defendant by phone, mail, and in-person interviews to ascertain his contentions of deprivation of constitutional rights and (2) "examined records of proceedings at the jury waiver, stipulated bench trial and subsequent court proceedings as well [as] records of his former attorneys and jail custodians." Counsel also stated that, with defendant's consent, he "elected to stand without amendment on [the *pro se* petition] as supplemented by [defendant's affidavit] as necessary for adequate presentation of his contentions."

¶ 20    The State moved to dismiss the petition, asserting that it was both untimely and without merit.  In response, defendant argued in part that an evidentiary hearing was necessary to resolve certain questions of fact, namely (1) whether he was culpably negligent in filing his petition and (2) when Redington's conflict of interest arose.

¶ 21    On July 13, 2021, the trial court granted the State's motion to dismiss, finding that the petition was untimely and also lacked substantive merit.  Defendant timely appealed, and the court appointed the Office of the State Appellate Defender to represent him in his appeal.

¶ 22                                   II. ANALYSIS

¶ 23    On appeal, the appellate defender moves to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63 (1993).  In his motion, counsel states that he read the record and found no issue of arguable merit.  Counsel further states that he advised defendant of his opinion.  Counsel supports his motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments why those issues lack arguable merit.  We advised defendant that he had 30 days to respond to the motion.  Defendant has not responded.

¶ 24    Counsel asserts that there is no potential merit in arguing that the trial court erred in dismissing the petition as untimely.  We agree.  Therefore, we need not determine if, as counsel also asserts, the claims in the petition lack potential merit.  Finally, counsel asserts that it would be frivolous to argue that postconviction counsel provided unreasonable assistance to defendant.  We need to address this claim only as it relates to counsel's duty to amend the petition to address untimeliness.  On that limited question, we agree with counsel.

¶ 25    At the second stage of postconviction review, "the defendant bears the burden of making a substantial showing of a constitutional violation."  *People v. Johnson*, 2015 IL App (2d) 131029,

¶ 18. At the second stage, the State may move to dismiss the petition (see 725 ILCS 5/122-5 (West 2018)). Timeliness is one of the grounds on which the State may move to dismiss the petition. *People v. Perkins*, 229 Ill. 2d 34, 48 (2007).

> "If a postconviction petition is not filed within the limitations period, the Act requires the petitioner to allege facts showing the delay was not due to his or her culpable negligence. [Citation.] Absent allegations of lack of culpable negligence, the Act directs the trial court to dismiss the petition as untimely at the second stage upon the State's motion." *Perkins*, 229 Ill. 2d at 43.

"Culpable negligence has been defined as unintentional yet negligent conduct that involves a disregard of consequences that are likely to result from a person's actions"; "culpable negligence is akin to recklessness and requires something more than ordinary negligence." *Johnson*, 2015 IL App (2d) 131029, ¶ 27. We review *de novo* a dismissal on the State's motion. *Johnson*, 2015 IL App (2d) 131029, ¶ 18.

¶ 26 Defendant's petition was untimely. Where, as here, a prisoner does not file a petition for leave to appeal after his or her direct appeal is decided, the deadline for a postconviction petition is six months after the petition for leave to appeal would be due, which is 35 days after the filing of the appellate court's decision. *People v. Johnson*, 2017 IL 120310, ¶ 24. We affirmed defendant's conviction on May 14, 2007, so his petition should have been filed before the end of 2007.

¶ 27 Counsel is correct that it would be frivolous to argue that defendant showed a lack of culpable negligence. Defendant's affidavit and the procedural history provide some explanation for why defendant might have been forced to delay filing until later in 2009; he was still trying to get transcripts. However, according to his affidavit, he ceased to pursue his petition for 10 years

thereafter because "non-lawyer inmates assigned to the law libraries" told him that he was too late. But reliance on advice from prison law clerks and similar non-lawyers is not reasonable where, as here, nothing suggests those individuals have specialized knowledge of postconviction matters. *Johnson*, 2017 IL 120310, ¶ 26. Therefore, such reliance is insufficient to establish that a delay in filing a petition is not due to the petitioner's culpable negligence. *Johnson*, 2017 IL 120310, ¶¶ 26-27. Thus, the court did not err in concluding that defendant's petition was untimely and that the untimeliness was not excused. It would be frivolous to argue otherwise.

¶ 28    Moreover, it would be frivolous to argue that postconviction counsel provided unreasonable assistance to defendant in establishing a lack of culpable negligence. Postconviction counsel is required to provide a reasonable level of assistance. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 11. The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel provided reasonable assistance. *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25. It is defendant's burden to overcome that presumption. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 29    On the question of culpable negligence, Rule 651(c)

> "requires counsel to amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence. In discharging this duty, counsel must inquire of the petitioner whether there is any excuse for the delay in filing. As a practical matter, any potential excuse for the late filing will often be discovered by speaking with the petitioner. Counsel must also allege any excuse for the delay in filing apparent from the pleadings and the portions of the record counsel must review to present petitioner's claims." *Perkins*, 229 Ill. 2d at 49-50.

Here, counsel's Rule 651(c) certificate is facially valid. Thus, defendant has the burden of overcoming the presumption that counsel provided reasonable assistance. Defendant cannot credibly argue that counsel was unreasonable. Defendant's affidavit, prepared by counsel, shows that counsel discussed the timeliness issue with defendant. The affidavit accounts for virtually all the delay between this court's decision in defendant's direct appeal and the filing of his postconviction conviction. However, as shown, the reason defendant gives for 10 of the roughly 12 years of delay is not a valid excuse under the case law. Given defendant's averments, it would be frivolous to argue that counsel could have amended the petition to excuse its untimeliness.

¶ 30                                            III. CONCLUSION

¶ 31     After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Ogle County.

¶ 32     Affirmed.